Daniel J. BURGE and Clifford Henry,
Intervenors Below, Appellants,

v.

FIDELITY BOND AND MORTGAGE
COMPANY, a corporation organized
and existing under the laws of the Com-
monwealth of Pennsylvania, Plaintiff
Below, Appellee, Cross Appellant,

v.

Benjamin DUNCAN and Donna Duncan,
Defendants Below, Appellees.

No. 62, 1994.

Supreme Court of Delaware.

Submitted: July 19, 1994.
Decided: Sept. 27, 1994.
Rehearing Denied Oct. 31, 1994.

John R. Weaver, Jr., Wilmington, for Daniel J. Burge and Clifford Henry, appellants.

Robert T. Aulgur, Jr., Odessa, for Fidelity Bond and Mortg. Co., appellee.

Before WALSH, HOLLAND and HARTNETT, JJ.

WALSH, Justice.

In this appeal from the Superior Court we address the scope of the Court's authority to set aside a sheriff's sale. Appellants–Intervenors, Daniel J. Burge and Clifford Henry ("Intervenors") appeal from an order setting aside a sheriff's sale at which they successfully bid for real property. Intervenors claim that the Superior Court exceeded its authority in voiding the sale on the basis of an unilateral mistake arising from an erroneous bid by an agent of the mortgagee. We conclude that the Superior Court properly exercised its broad discretion in the supervision and review of the sheriff's sale by setting aside the sale based upon unilateral mistake. We also affirm the Superior Court's decision to award Intervenors their costs and counsel fees arising from the sale.

I

The current dispute arose as a result of a sheriff's sale of a residence in New Castle County owned by Benjamin and Donna Duncan ("Duncans") and encumbered by a mortgage held by Fidelity Bond and Mortgage Company ("Fidelity"). In 1991, the mortgage came into default and Fidelity commenced a foreclosure action against the Duncans. In an attempt to forestall the foreclosure, the Duncans initiated bankruptcy proceedings and obtained an automatic stay of all actions pending against them. Fidelity, however, was successful in petitioning the Bankruptcy Court to lift the stay so that its foreclosure could proceed. Eventually Fidelity obtained a judgment against the Duncans in the amount of $117,232.84 and the property was scheduled for auction by the Sheriff of New Castle County on August 10, 1993.

Only two bidders emerged at the sheriff's sale. Fidelity, through its attorney, Robert Aulgur, Jr. ("Aulgur"), made a single bid of $76,500 for the property while Intervenors submitted a bid of $77,000. The Intervenors' bid was accepted and they paid the requisite 10% of the purchase price to the sheriff at the time of the sale. Within two days of the sale, Aulgur discovered that he made a computing error in making his bid and contacted the Intervenors about the error. Aulgur claimed that he had been instructed by Fidelity to bid the amount of $127,115.94, representing the "upset price" of the property as indicated on the sheriff's cost sheet.[1] Aulgur stated that he read a cost sheet for a different property when bidding at the sheriff's sale, resulting in a $50,000 differential from what he was authorized to bid and his actual bid. The Intervenors were not sympathetic to Aulgur's plight.

On September 8, 1993, Fidelity filed a motion in the Superior Court to set aside the sheriff's sale, on the basis of Aulgur's "clerical error" which resulted in a price which was "inadequate and unreasonable." Benjamin Duncan also filed a motion to set aside the sheriff's sale on the grounds that he did not receive adequate notice of the proceeding as required by Superior Court Civil Rule 69(g). Because the Duncans did not oppose Fidelity's motion, Intervenors filed a Motion

---

1. When property is scheduled for sale, the sheriff normally prepares a cost sheet which itemizes the costs associated with the sale. The cost sheet is customarily used by persons interested in the sale to assist in the bidding computation process and typically includes such items as: the underlying debt that the mortgagor owes the mortgagee (judgment), prothonotary costs, the principal amount, interest, late charges, escrow, overdrafts, counsel fees, transfer tax, sheriff's commissions and any other costs involved in the sale. The "upset price" represents the total amount of these costs. Mortgagees typically bid the "upset price" at sheriff's sales to guaranty that the underlying mortgage debt is recovered.

to Intervene so that they could protect their purchase by seeking confirmation of the sale.

The Superior Court granted Intervenors' motion to intervene and requested that the parties submit affidavits in support of their respective motions to confirm or set aside the sheriff's sale. Aulgur's affidavit set forth the basis for his erroneous bid and recited that Fidelity would bid the upset price if a subsequent sheriff's sale were held.

The Superior Court rejected Duncan's motion, finding that Fidelity complied with the notice requirements of Rule 69(g) by taking all reasonable steps to ascertain Benjamin Duncan's residence.[2] The court granted Fidelity's motion to set aside the sheriff's sale, holding that the sales price of the property was inadequate and unconscionable to Fidelity. In denying Intervenors' motion for reargument, however, the court ruled that the Intervenors were to be "made whole" by Fidelity regarding all costs they incurred from the transaction, excluding their counsel fees for the reargument motion. Intervenors appeal the setting aside of the sheriff's sale and Fidelity cross-appeals from the award of costs and counsel fees.

## II

■ Preliminarily, we address an issue of standing. Intervenors assert that Fidelity should be denied standing to challenge the sale. It is argued that a foreclosing mortgagee, who is properly notified, present and actually bids at a sheriff's sale which is procedurally correct, is precluded from contesting such a sale because "the objective of judicial scrutiny of sheriff's sales is not to delay the consummation of the execution but to assure that the defaulting obligor has received just treatment in the execution process." *Girard Trust Bank v. Castle Apartments, Inc.,* Del.Super., 379 A.2d 1144, 1147 (1977). Intervenors note that the interests of the mortgagors are protected[3] and Fidelity does not challenge the correctness of the sale procedures. Therefore, it is argued that

the Superior Court exceeded its authority in considering the interests of the mortgagee in the confirmation process.

■ Although protection of the rights of the defaulting mortgagor is of paramount importance in reviewing a sheriff's sale, it has long been recognized that any party with an interest in the property sold or the proceeds of the sale may object to its confirmation. *See, e.g., Petition of Adair,* Del.Super., 190 A. 105, 107 (1936) (equitable owner under oral lease with option to purchase); *Cochran v. Deakyne,* Del.Super., 43 A. 170 (1897) (judgment creditor); *Petition of Seaford Hardware Co.,* Del.Super., 132 A. 737 (1926) (judgment creditor); *see also* 2 Victor B. Woolley, *Practice in Civil Actions in Delaware,* § 1108 (1906) (*"Woolley's Delaware Practice"*). Moreover, a party may challenge a sheriff's sale which is procedurally correct if the party can demonstrate that he or she has suffered detriment. *Girard Trust Bank,* 379 A.2d at 1145. Indeed, a petition to set aside a sheriff's sale "is simply the means whereby a person who considers himself aggrieved may call the Court's attention to some defect, irregularity, neglect, misconduct or other sufficient matter whereby his rights have been prejudiced." *Central National Bank of Wilmington v. Industrial Co.,* Del.Super., 51 A.2d 854, 856 (1947).

■ It is beyond dispute that Fidelity, as the mortgagee, has an interest in the sheriff's sale. As the senior lienholder of the foreclosed property, it is entitled to the proceeds of the sale in the amount of its default judgment after the fees and costs of the sale are deducted. While the court must scrutinize the sale to ensure that the mortgagor is treated fairly, *Girard Trust Bank,* 379 A.2d at 1147, the interests of the mortgagee and other parties affected by the sale must be considered as well. Here, Fidelity's interest in the sale, *i.e.,* its ability to recover its mortgage debt, will be prejudiced if the sale is confirmed. Thus, while it is somewhat unusual for a bidding mortgagee to seek to

---

2. The Superior Court's holding on Benjamin Duncan's motion was not appealed.

3. The mortgagor would normally be liable to the mortgagee for any deficiency between the price

obtained for the property at the sale (minus costs of the sale) and the amount of the mortgagee's judgment. Subsequent to the sheriff's sale, however, Fidelity agreed not to pursue a deficiency claim against the Duncans.

invalidate a sheriff's sale, where detriment can be shown, standing will be recognized. *See* Annotation, *Relief to Person Who By Mistake Has Foreclosed Real Estate Mortgage in Manner Inimical to His Own Interests,* 42 ALR 1192; 55 Am.Jur.2d *Mortgages* § 777.

### III

■ There is tacit agreement of the parties that the appraised fair market value of the property at the time of the sale was between $97,000 and $107,000. The Intervenors' bid thus represented approximately 71% to 80% of the estimated fair market value of the property. Intervenors claim that the price they paid for the property sufficiently approximated its fair market value as to preclude further judicial scrutiny into the sale.

■ It is a well-established rule in Delaware that mere inadequacy of price, standing alone, is an insufficient ground for setting aside a judicial sale. 2 *Woolley's Delaware Practice, supra,* § 1121. A sheriff's sale may be set aside, however, when the sales price is so *grossly* inadequate that it shocks the conscience of the court. *Id.* This determination is largely dependant upon the particular circumstances of the individual case. *Id.* A decisional standard has evolved in the Superior Court, however, which requires special judicial scrutiny where a property sold at the sheriff's sale fails to secure a bid which represents at least fifty percent of its fair market value ("50% test"). If the fair market value of the property is over twice the sales price, the price is considered to be grossly inadequate, shocking "the conscience of the court," and justifying the setting aside of the sale. *Id.; Central National Bank,* 51 A.2d at 858; *Home Beneficial Life Insurance Co. v. Blue Rock Etc.,* Del.Super., 379 A.2d 1147, 1149 (1977). Here, because the property was purchased for at least 71% of its fair market value, Intervenors argue that the sales price met the decisional standard and the sale should not have been set aside on the basis of inadequate price.

■ Intervenors are correct in their claim that the price they paid for the proper-

ty was not grossly inadequate under the 50% test. However, the 50% test is not the sole touchstone of acceptability. Court approval of a disputed sheriff's sale depends on "the particular circumstances of the case." 2 *Woolley's Delaware Practice, supra,* § 1121; *Girard Trust Bank,* 379 A.2d at 1146. When the Superior Court reviews a sheriff's sale, it may consider factors other than price. Specifically, it must ascertain whether there was "some defect or irregularity in the process or mode of conducting the sale, or [ ] neglect of duty, or misconduct on the part of the Sheriff *or some other sufficient matter* ... whereby the rights of parties to, or interested in the sale are, or may have been, prejudiced." *Petition of Adair,* 190 A. at 107 (citation and internal quotation marks omitted) (emphasis added). Woolley voices a similar view:

> Where there has been *mistake,* misconduct or fraud in the course of the sale, whereby any of the parties to or interested in the proceeding are prejudiced, it may be corrected by an application on the part of the party aggrieved to set the sale aside. *The power of the court in this respect is broad and discretionary....*

2 *Woolley's Delaware Practice, supra,* § 1108 (emphasis added).

■ We conclude that the sales price need not be unconscionable in order for the court to set aside a sheriff's sale. Delaware courts may, in their discretion, set aside a sale where inadequacy of price will result in unfairness or work an injustice on any party having an interest in the outcome of the sale. Fraud, mistake, accident, impropriety, misconduct, surprise or irregularity in the sale process will support judicial invalidation of the sale. 59 C.J.S. *Mortgages* § 744; *Arlt v. Buchanan,* Fla.Supr., 190 So.2d 575, 577 (1966). Here, however, the inadequacy of the sales price was due to an avoidable, unilateral mistake by the mortgagee's agent. Whether an unilateral mistake resulting from a bidder's inadvertence falls within the category of factors warranting judicial redress is a case of first impression in Delaware. Intervenors contend that a bid, freely made, is a contractual undertaking and the bidder assumes the risk of inadvertence.

## IV

In the law of contracts, a party is permitted to rescind an agreement based upon its unilateral mistake when: (1) enforcement of the agreement would be unconscionable; (2) the mistake relates to the substance of the consideration; (3) the mistake occurred regardless of the exercise of ordinary care; and (4) it is possible to place the other party in the status quo. *Matter of ENSTAR Corp.*, Del.Supr., 604 A.2d 404, 411 (1992) *citing* 13 *Williston on Contracts* § 1573 (3d ed. 1970). Contract law thus contemplates that the aggrieved party's mistake not be the result of inadvertence which could have been avoided had ordinary care been exercised. Fidelity has conceded its inadvertence and thus may not rely upon the law of contracts as a basis for relief.

The authority of a court to review contracts is limited, however, to give effect to the intent of the parties as evidenced by the terms of the contract. *E.I. duPont de Nemours v. Shell Oil Co.*, Del. Supr., 498 A.2d 1108, 1113 (1985). The contract becomes unenforceable only upon a showing of unconscionability, *i.e.*, when its terms are "so one-sided as to be oppressive." *Graham v. State Farm Mutual Auto. Ins. Co.*, Del.Supr., 565 A.2d 908, 912 (1989). We view that the power of the Superior Court to confirm or set aside a sheriff's sale as significantly different from its authority to alter the existing terms of a contract between private parties. Judicial review of a contested sheriff's sale implicates the court's inherent equitable power to control the execution process and functions to protect the affected parties from injury or injustice. *Petition of Adair*, 190 A. at 107; *see also Karel v. Davis*, App., 122 N.J.Eq. 526, 194 A. 545, 546 (1937); *Peterson v. First National Bank*, 162 Minn. 369, 203 N.W. 53 (1925). Thus, a court has far greater latitude to examine the fairness of its inherent processes than it does to review a contract transacted by independent parties. Because the contractual undertaking is under the aegis of the court, mistake of fact may be grounds to set aside a sheriff's sale even though the mistake would be insufficient for rescission of a contract. *Cf.* 59 C.J.S. *Mortgages* § 744(2)(b)a.a.

We thus affirm the broad discretion of the Superior Court to confirm or set aside sheriff's sales. 2 *Woolley's Delaware Practice, supra,* § 1108; *Petition of Adair,* 190 A. at 107; *Central National Bank,* 51 A.2d at 856; *Petition of Seaford Hardware Co.,* 132 A. at 738. *Contrast Matter of Spencer,* D.Del., 115 B.R. 471, 482 (1990) ("The Delaware Superior Court's power to confirm a sheriff's sale is strictly limited...."). This equitable power derives from the inherent control of the court over its own process "for the correction of abuses or the prevention of injury." *Petition of Seaford Hardware Co.,* 132 A. at 738. This discretion is not without limitation, however. For instance, a court may not arbitrarily or capriciously refuse to confirm a sale, where there are no irregularities in the sale proceedings and no fraud, unfairness, or other extraneous matter demonstrating unfairness to one of the interested parties is shown. 59 C.J.S. *Mortgages* § 744(2)(a).

Intervenors also assert that Fidelity is estopped from contesting the sheriff's sale because any inadequacy in the sales price of the property was caused by the unilateral mistake of its own agent. *See* 59 C.J.S. *Mortgages* § 748(b). The doctrine of equitable estoppel applies when a party intentionally, or unintentionally, induces another to detrimentally rely on the party's conduct. *Wilson v. American Insurance Co.,* Del.Supr., 209 A.2d 902, 903–04 (1965). For an estoppel claim to prevail, it must be shown that the party claiming estoppel lacked knowledge or the means of obtaining knowledge of the truth of the facts in question, relied on the party against whom estoppel is claimed, and suffered a prejudicial change in position as a result of that reliance. *Id; Waggoner v. Laster,* Del.Supr., 581 A.2d 1127, 1136 (1990).

The essential elements of an estoppel claim are clearly lacking here. Although Intervenors presumably relied upon Fidelity's bid in making their own bid, and suffered some prejudice when the sale was set aside, Intervenors *should have known* of Aulgur's bidding mistake. The record is unclear as to whether the Intervenors actually

saw the sheriff's cost sheet, but they apparently had access to the document which is the primary source of reference in the bidding process. Such a large discrepancy ($50,000) between the "upset price" and Aulgur's bid should have suggested to Intervenors that a mistake had been made. In addition, a bidder at a judicial sale is not estopped from later claiming title to the property sold. *Harlan & Hollingsworth Corp. v. McBride,* Del.Supr., 69 A.2d 9, 13 (1949). Therefore, we cannot rule, *as a matter of law,* that a unilateral mistake of fact precludes a party from contesting a sheriff's sale. Rather, this determination is properly reserved for the supervisory court as a matter of discretion. *Accord Wells Fargo Credit Corp. v. Martin,* Fla.App., 605 So.2d 531, 533 (1992); *Crane v. Bielski,* 15 N.J. 342, 104 A.2d 651, 654 (1954).

▮▮▮▮ Intervenors assert that the integrity of sheriff's sales will be compromised if the Superior Court's order is affirmed. It is argued that an otherwise open and fair bidding process will be frustrated by allowing disgruntled bidders, who later discover that they undervalued the property sold, to mount successful challenges to sheriff's sales. Intervenors argument is well-taken. The rights of the third party purchaser at such sales must always be considered and given great weight. Sheriff's sales should not be set aside for trivial or insufficient reasons lest parties be discouraged from bidding at future sales. *In re Downham Co.,* Del.Super., 165 A. 152, 153 (1932). The integrity of a competitive bidding process depends upon the ability to obtain the highest and best price obtainable for the property at the time of the sale. *Karel v. Davis,* 194 A. at 546. It would be detrimental to this process if potential bidders were deterred from bidding because of the uncertain finality of sheriff's sales in general. Thus, a properly conducted sale should be set aside only when necessary to correct a plain injustice, consistent with principles of equity. *Id.*

We find no abuse of discretion in the lower court's decision which was formulated after a careful consideration of the circumstances of the case. It was unrefuted that Aulgur made an error in his bid and that he intended,

under authority from his client, to bid as much as $50,000 more than his actual bid. It was neither arbitrary nor capricious for the court to find that this unilateral mistake would work an unconscionable result to Fidelity, if upheld. The court's finding that the mistake, once discovered and communicated to Intervenors within two days of the sale, did not seriously prejudice them is also supported by the record. The fact that Fidelity intends to tender a bid in the amount of the "upset price" if a subsequent sale is held further supports the court's holding. We conclude that the Superior Court did not abuse its discretion by setting aside the sheriff's sale.

We acknowledge that courts considering the issue of a unilateral mistake by a mortgagee while bidding at a sheriff's sale have reached the opposite conclusion. *See Crossland Mortgage Corp. v. Frankel,* 192 A.D.2d 571, 596 N.Y.S.2d 130 (1993); *Nussbaumer v. Superior Court of Yuma,* 107 Ariz. 504, 489 P.2d 843 (1971) (mortgagee's *overbid*). To the extent these cases establish an absolute rule of law abrogating the discretion of the court to set aside sheriff's sales for a mortgagee's unilateral mistake, we find them unpersuasive and decline to follow them.

### V

▮▮▮▮ In its cross-appeal, Fidelity claims that the Superior Court abused its discretion by imposing upon it the costs and counsel fees incurred by Intervenors. The court reasoned that the award was necessary so that Intervenors could be "made whole." We agree. It is beyond dispute that litigants in Delaware are generally responsible for paying their own counsel fees in the absence of either statutory authority or a contractual undertaking. *Tandycrafts, Inc. v. Initio Partners,* Del.Supr., 562 A.2d 1162, 1164 (1989). A limited exception to this general rule applies when the circumstances of an individual case mandate that the court, in its discretion, assess counsel fees "where equity requires." *Wilmington Medical Center v. Severns,* Del.Supr., 433 A.2d 1047, 1049–50 (1981); *see also Loretto Literary, Etc. v. Blue Diamond Coal,* Del.Ch., 444 A.2d 256 (1982). Whereas the exception has been

most often applied in the Court of Chancery, it has equal viability in any situation in which a court is obliged to apply equitable principles.

■ Although the Superior Court has concurrent jurisdiction with the Court of Chancery to foreclose on a mortgage, such proceedings are historically and remain inherently equitable. *Handler Construction v. Core–States Bank, N.A.*, Del.Supr., 633 A.2d 356 (1993). In setting aside the sheriff's sale, the court below exercised its inherent equitable authority to "control its own process." The court likewise applied its equitable power when it awarded costs and counsel fees to the Intervenors because "equity required." Intervenors, as third party purchasers, were innocent of any wrongdoing. Their apparent good faith purchase was set aside because of a unilateral mistake caused by the mortgagee. It was entirely appropriate to assess Intervenors' costs and counsel fees upon Fidelity if the Intervenors were to be restored to their *status quo*. We find no abuse of discretion in that decision.

The judgment of the Superior Court is affirmed in its entirety.