# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE CITY OF WILMINGTON,<br>A municipal corporation of the State<br>of Delaware, | )<br>)<br>)<br>) | |
| Plaintiff, | ) | C.A. No. N20J-07653 |
| | ) | |
| v. | )<br>) | |
| JACOB VREELAND AND<br>TAX PARCEL NO. 26-022.10-043,<br>Defendants. | )<br>)<br>) | |

_____

| | | |
|---|---|---|
| v. | )<br>) | |
| WELLS FARGO BANK, N.A.,<br>Intervenor. | ) | |

## OPINION AND ORDER

### *Decided: August 9, 2022*

### *On Intervenor's Motion to Set Aside Sheriff's Sale – GRANTED*
### *On Motion to Strike Notice of Lis Pendens - DENIED*

*Aaron C. Baker*, *Esquire* and *John D. Stant, II., Esquire*, attorneys for the City of Wilmington, Plaintiff.

*Daniel M. Pereira, Esquire* and *Christopher A. Reese, Esquire*, Stradley, Ronan, Stevens & Young, LLP, attorneys for Wells Fargo Bank, N.A., Intervenor.

*David Matlusky, Esquire*, The Matlusky Firm, LLC, attorney for Quality Angels Real Estate, purchaser.

**Brennan, J.**

## I.　BACKGROUND AND PROCEDURAL HISTORY

The City of Wilmington filed a Writ of Monition on November 23, 2020, with respect to a property located at 421 West 22nd Street, Wilmington, Delaware, Tax Parcel ID No. 26-022.10-043 (hereinafter "the Property").[1]　Through the Writ, the City of Wilmington sought to collect on monies owed to the City in the amount of $6,416.32 levied on Notices were posted on the Property and sent to all lien holders.[2] Ultimately a Sheriff's Sale occurred on April 13, 2021, at which the Property was sold to Quality Angels Real Estate Company (hereinafter "Quality Angels") for $146,000.00.[3]　On July 22, 2021, an Affidavit of No Redemption was filed by the New Castle County Sheriff, stating that after "an inspection of the books and records, as well as an examination of the personnel in [the Sheriff's office]…there has been no attempt, nor any Act indicating an attempt to redeem said property [and] [t]hat the facts set forth in the petition for the deed in this proceeding are true and correct."[4]　In the normal course, Quality Angels then petitioned this Court for the deed of the property,[5] which was granted and Ordered on October 1, 2021.[6]

Approximately one month later, however, Wells Fargo, N.A. (hereinafter "Wells Fargo"), which held a mortgage on the Property, filed both a Motion to Intervene and a Motion to Set Aside the Sheriff's sale.[7]　In support of both motions, Wells Fargo argued that 1) its security interest in the Property allows it to intervene, 2) it was not provided with sufficient notice of the sale and 3) that Wells Fargo made a payment to the City of Wilmington in the amount of $7,646.11 on May 20, 2021,

---

[1]　　See D.I. 1
[2]　　D.I. 6
[3]　　D.I. 7, 9
[4]　　D.I. 8
[5]　　D.I. 10
[6]　　D.I. 11
[7]　　D.I. 26, 30

and had believed they had effectively redeemed the Property.[8]  On November 15, 2021, an Affidavit in support of Wells Fargo's motion to set aside the Sheriff's sale was filed, stating that the remaining balance of the Wells Fargo mortgage on the Property is $167,731.74.[9]  Quality Angels and the City of Wilmington opposed both of Wells Fargo's motions.[10]

These motions were first presented to the Court on December 10, 2021.  The motion to intervene was granted in a bench ruling, and an evidentiary hearing was ordered to develop the record surrounding the attempt at redemption by Wells Fargo. At the hearing, the Court directed the parties' arguments to the issue of how it came to be that the City of Wilmington received and deposited the $7,646.11 check from Wells Fargo following the sale, but no mention of this deposit or attempt was found in the later filed Affidavit of No Redemption.[11]  The evidentiary hearing was set for January 18, 2022, but in the meantime, Wells Fargo filed a Notice of *Lis Pendens*, seeking to protect their interest in the Property.[12]  Following the evidentiary hearing, the Court requested the City of Wilmington to submit a breakdown of the amounts owed on the Property at specific dates, namely the date the Motion was filed, the date of the Sheriff's sale, the date Wells Fargo's check was cashed by the City of Wilmington and the date the Affidavit of No Redemption was filed.  The City was also given the option of supplementing the record with a statement of the Chief Deputy Sheriff, who filed the Affidavit of No Redemption, as to why the Affidavit was filed, despite the attempt by Wells Fargo to redeem the property.[13]

---

[8]     D.I. 30
[9]     D.I. 36
[10]    D.I. 42, 43
[11]    D.I. 44, 45
[12]    D.I. 46, 47
[13]    D.I. 50

<u>City of Wilmington's Evidence</u>

At the evidentiary hearing, the parties presented a Joint Stipulation of facts that the Court signed off on, and the parties proceeded to present their respective cases. The evidence adduced at the hearing showed that on May 25, 2021, the City of Wilmington received and deposited a $7,646.11 check from Wells Fargo.[14] The City of Wilmington called Farrah Lambert, who works as a Sheriff's sale administrator for the City and is responsible for researching and initiating the properties for Sheriff sale.[15] Ms. Lambert testified that as part of her duties, she takes phone calls regarding delinquent accounts and documents these calls in their operating system.[16] She explained that these notes are kept according to each delinquent property's account and she documents any phone calls regarding the account and the pertinent portions of the conversations in a log type system; the City introduced the log notes for the Property into evidence.[17] Logs are kept for every delinquent account by the City.[18]

Ms. Lambert did not personally take any calls from Wells Fargo with respect to the Property's delinquent account.[19] She did make a log entry on March 12, 2021, indicating that the Sheriff's sale was scheduled for April 13, 2021. She identified this as her note, because her initials were located next to the note.[20] Ms. Lambert further described the process in which the City deposits received checks. She explained that the City complies "batch checks" which are large groups of checks that come in and process one after the other in a batch. Notes are not made for each property for which the check is made if the check is in one of these batches.[21] On

---

[14]    Transcript of Evidentiary Hearing, p 7, Joint Exhibit 1
[15]    Transcript at 9, 10
[16]    Transcript at 10, 11
[17]    Transcript at 11, 12
[18]    Transcript at 12
[19]    Id.
[20]    Transcript at 15, 16
[21]    Transcript at 14, 15

cross-examination, Ms. Lambert admitted that it is possible for calls to be received on a particular account that aren't reflected in the log for that account.[22]

The City next called Susan McGee, an account services agent for the City. Ms. McGee explained that she is in collections and interacts with delinquent accounts. She has been working in this capacity with the City for 23 years. As part of her duties, she quotes amounts due and works with customers, attorneys or anyone who requests information with respect to a property.[23] Similar to Ms. Lambert, Ms. McGee testified that she takes notes with respect to her interactions to document and these notes are kept in the same log referenced by Ms. Lambert. According to Ms. McGee, every call that she takes is documented, saved and initialed.[24] It was Ms. McGee who took the call from a Wells Fargo representative and confirmed that they paid the $7,674.11 check. According to Ms. McGee, who referenced her notes from the conversation memorialized the log, she:

> [s]poke with representative form Wells Fargo, confirmed company paid $7,674.11. Advised client payment was applied at the sale date 4/13/2021, and that's considered as redeemed. Need to call New Castle County Sheriff's Department for redemption figures.[25]

Ms. McGee testified that, despite the City depositing this check and despite Wells Fargo mentioning redemption of the Property, the City takes absolutely no action upon cashing of a check for a property that has already been sold at Sheriff's sale. She referred Wells Fargo to the Sheriff's office. The record is devoid of any evidence demonstrating what was actually said, to the Wells Fargo representative, since the notes only indicate "Need to call New Castle County Sheriff's Office for redemption figures." Moreover, Ms. McGee offered no independent recollection of

---

[22]     Transcript at 16, 17
[23]     Transcript at 20, 21
[24]     Transcript at 22
[25]     Transcripts at 22; see also City of Wilmington Exhibit 1

the conversation and Wells Fargo is unable to determine through their records, which employee spoke to the City of Wilmington on June 22, 2021. Ms. McGee admitted that she understood the payment by Wells Fargo to be an attempt at redemption but took no action other than telling the caller to contact the Sheriff's Office.[26]

No witness was produced from the Sheriff's Office, nor was any evidence presented by Plaintiff to indicate whether Wells Fargo did, in fact, contact the Sheriff's Office following this call. The City confirmed that the check was cashed and applied to the Property's account as a credit towards the balance due.[27] At the time of this payment, the amount owed on the Property was "a little over [$]7,400 for water fees, a little over [$]5,000 which was due to the City and sought in the monition for licensing and inspection fines and fees associated with property [sic], and then costs of $444."[28] Ultimately it was revealed that the monies paid by Wells Fargo translated into a credit on the Property account for the water bill. However, there were remaining Licensing and Inspection fines that were outstanding, and interest was accruing. Therefore, the redemption figure was significantly greater than the figures listed on the Monition, which stated that only $6,416.32 was owed. The approximate redemption figure given to the Court would have been a number close to $13,000.[29]

It is still unclear where the very specific figure of $7,467.11 came from, as the notes recorded by the City of Wilmington for the Property do not indicate any employee giving this figure to Wells Fargo. The City acknowledged that the amount paid is too specific to have been conjecture and that it could have been provided by the City, despite their Property record not reflecting any such conversation. Counsel

---

[26]    Transcript at 24-26
[27]    Transcript at 27
[28]    Transcript at 28, 29
[29]    Transcript at 30

represented to the Court that these figures can also be accessed online, which the City posited as possible alternative of how Wells Fargo obtained this figure.[30] In either event, at this point in the hearing it was clear that a figure for arrears was obtained by Wells Fargo based upon information provided by the City of Wilmington – whether by telephone or electronic means.

Wells Fargo's Evidence

Wells Fargo called Kelly Renfrow, a corporate representative who had reviewed the notes kept by Wells Fargo with respect to the Property. Ms. Renfrow testified that, while Wells Fargo is the beneficial owner of the mortgage, Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS") holds the mortgage of record for the mortgage on the property.[31] Ms. Renfrow testified that MERS electronically notified Wells Fargo on April 9, 2021, that the Property was going to Sheriff's sale by forwarding the Notice sent by the City.[32] Ms. Renfrow filled in some gaps and testified that her records "indicate that [Wells Fargo] had an E-mail from the City that outlines that [sic] was the amount required for redemption." Unfortunately, due to storage limitations on Wells Fargo systems, the email itself was not saved and could not be produced. Ms. Renfrow, however, testified based upon the notes Wells Fargo kept for the Property.[33] According to the Wells Fargo notes, this email was received by Wells Fargo on May 17, 2021. [34] This was one month following the sale.

Ms. Renfrow testified that the purpose of remitting the $7,646.11 check was, unsurprisingly, to redeem the Property.[35] According to Wells Fargo's notes, calls

---

[30]     Transcript at 33-35
[31]     Transcripts at 37
[32]     Transcript at 39
[33]     Transcript at 40
[34]     Transcript at 45
[35]     Transcript at 40, 41

were made by its representative regarding the Property on June 15, 22 and 29, 2021. She elaborated that the June 15 call was to the City and made to "confirm receipt of the funds," which was not done at the time. The notes contain evidence that this initial phone call was made to confirm receipt of the check. According to the Wells Fargo's notes, the City was not able to confirm redemption and someone else needed to be contacted. The additional phone calls made were efforts to determine whether redemption was, in fact, made and to ensure that Wells Fargo had protected its interest or whether additional action needed to be taken. Ms. Renfrow testified that "[t]he City looked like, on our records, confirmed that they had received the amount of the payment we sent. There were some notes that we did need to contact the county, which was also done. And we were told that the taxes were taken care of at the county." With that, Wells Fargo took the position that it had done what it needed to do.[36] Ms. Renfrow testified that the June 29, 2021, call was to New Castle County and that during that call, Wells Fargo was told that there were no further delinquent taxes owed.[37] Ms. Renfrow clarified that this is the process that Wells Fargo takes when redeeming a property – it obtains a figure electronically, pays the monies it believes is owed and places follow-up phone calls to ensure that the money was received and nothing else was owed.[38]

Unfortunately, the Court is somewhat hamstrung because the May 17 email is now unable to be retrieved by Wells Fargo, as it was "autoarchived" and deleted due to storage issues.[39] Additionally, none of the calls made were recorded by either party. Moreover, the Wells Fargo representative who wrote the email and made the calls has no independent recollection of the conversations other than what is

---

[36]   Transcript at 42
[37]   Transcript at 46
[38]   Transcript at 47, 48
[39]   D.I. 51, Affidavit of Anthony D. Nelson, Wells Fargo, N.A.

contained in the Wells Fargo notes.[40]  Post evidentiary hearing, the New Castle County Sheriff's Office submitted a letter, via its attorney, which essentially stated that the Affidavit of No Redemption was filed because their records did not indicate any attempt at redemption.[41]

## II.    STANDARD OF REVIEW

Upon a motion to set aside a Sheriff's sale, the Court has great discretion in its review.  In so doing, the Court "must ascertain whether there was some defect or irregularity in the process or mode of conducting the sale, or neglect of duty, or misconduct on the part of the Sheriff or some other sufficient matter whereby the right of parties to, or interested in the sale are, or may have been, prejudiced."[42]  Mere inadequacy of the price, alone, is not sufficient to set aside a Sheriff's sale, and the Court may not arbitrarily or capriciously refuse to confirm a sale, where there are no irregularities in the sale proceedings, fraud, unfairness or other matters demonstrating unfairness to any interested party.[43] "[A] properly conducted sale should be set aside only when necessary to correct a plain injustice, consistent with the principles of equity."[44]

Under Superior Court Civil Rule 60(b), a Sheriff's sale may be set aside for multiple reasons including, but not limited to, mistake, inadvertence, excusable neglect, newly discovered evidence and fraud.[45]  However, relief under Rule 60(b) requires "extraordinary circumstances" and the Rules vest Superior Court with the power to vacate judgments "whenever such action is appropriate to accomplish

---

[40]    Transcript 52, 53

[41]    D.I. 54

[42]    *LSF9 Master Participation Trust v. Truitt*, 2017 WL 8787509 *1, citing *Burge v. Fidelity Bond and Mortgage Co.*, 648 A.2d 414, 420 (Del. 1994).

[43]    *Id.*

[44]    *Burge*, 648 A.2d at 421, citing *In re Downham Co.*, 165 A.2d 152, 153 (Del. 1932).

[45]    Superior Court Civil R. 60(b)

justice."[46]

## III. DISCUSSION

Wells Fargo raises several challenges to the Sheriff's sale of the Property: 1) that notice wasn't given to it in sufficient time to contest, 2) that it made an attempt to redeem the property, 3) based upon the information given to it by both the City of Wilmington and the Sheriff's Office of New Castle County, it believed that it had successfully redeemed the Property, and 4) an unjust result would occur should the sale not be set aside. Both the City of Wilmington and Quality Angels filed motions in opposition. Both argued that notice was sufficient, the process of the sale was proper, and that if the sale is overturned, an unjust result would occur. The City of Wilmington argued that the unjust result occurs when finality of sales is in jeopardy to valid purchasers. Quality Angels argues that it has spent significant resources on the purchase of the Property and would suffer financial loss should this sale be set aside. All parties agree on one thing: Quality Angels is an innocent third-party in this transaction and no alleged wrongdoing has been lodged against it as the purchaser.

## I. SHERIFF'S SALE PROPERLY NOTICED TO ALL LIEN HOLDERS

Wells Fargo's first argument to set aside the sale is that there was inadequate notice of the Sheriff's sale because MERS did not provide it notice of the sale until shortly before it occurred. The City maintains that notice is proper, because it complied with the requirements of Superior Court Civil Rule 69(g), which mandates that notice must be given 7 days prior to the sale. The City contends that notice was provided to MERS, the Mortgagee of record. The City is correct. The record reflects that proper notice was given to the lienholder of record, and therefore, the argument

---

[46] *City of Dover v. Hunter*, 880 .2d 239, 244 (Del. Super. 2004) *citing Dixon v. Delaware Olds, Inc.*, 405 A.2d0117 (Del. 1979) (further citations omitted).

that MERS failure to timely pass notice along to Wells Fargo is unpersuasive and is not a basis to set aside the Sheriff's sale. Any issue regarding MERS failing to provide Wells Fargo timely notice is an issue between Wells Fargo and MERS, as the City complied with its notice requirements.

## II. AN INJUSTICE OCCURRED WARRANTING THE SETTING ASIDE OF THE SHERIFF'S SALE

The parties disagree about whether an injustice has occurred which would warrant setting aside of the sale of the Property. Wells Fargo relies heavily upon this Court's decision in *City of Dover v. Hunter* in support of their motion. In so relying, Wells Fargo argues that the facts and circumstances surrounding the actions of the City – namely depositing its check and leaving it with the belief that the Property was redeemed – justify such an extraordinary remedy here. The City of Wilmington argues that Wells Fargo's attempt at redemption was unsuccessful and that the facts of this case do not justify setting aside the sale. Quality Angels argues that as a bonafide purchaser, there should be finality and predictability in this process, that the *City of Dover* case is distinguishable and that because it has expended significant costs in pursuit of this Property already, it would be unjust to set aside the sale.

This Court's decision in *City of Dover* is instructive and applicable. In *City of Dover*, due to a discrepancy in how the City of Dover and the County (Kent) identified the property at issue, for certain properties, taxes were not credited to the correct account. On one such account, the Hunter's, the City sought Monition under the mistaken belief that there were unpaid taxes. The property was sold at Sheriff's sale to an innocent third-party buyer. Due to the discrepancy in tax parcel identification numbers assigned to the property, taxes were paid, but in an amount corresponding to a smaller parcel at no fault of the mortgage company, Cendant. Therefore, a small amount of taxes remained unpaid. Following a number of steps,

Cendant attempted to redeem the property. Despite those attempts, the sale was confirmed. Suit ensued and the issue of whether the sale should be set aside was presented in the form of a motion for summary judgment. In that procedural posture, the Court ultimately decided that justice required setting aside the sale. In doing so, the Court thoroughly reviewed Delaware jurisprudence regarding setting aside a Sheriff's sale.

Most instructive to the Court is the analysis that *City of Dover* undertook when looking at the efforts made by Cendant, in attempting to redeem the property. The Court found that any neglect by Cendant in failing to ensure the property was, in fact, redeemed, was excusable under Rule 60(b). The Court reasoned that Cendant's failure to properly redeem was based upon its reliance that paying the small amount of taxes that remained owed on the property, but not the 15% redemption fee, as was required. In its analysis, the Court noted that Cendant's action was consistent with someone who had redeemed the property.[47]

Likewise here, it is illogical to assume that Wells Fargo would make payment on the water fees for the Property for any other purpose than to redeem the Property. It is also illogical to assume that Wells Fargo would be willing to pay the water bill, but would not have been willing to fully redeem the property had it been aware of or understood the additional costs owed on the property. Wells Fargo obtained what it thought was a payoff figure directly from the City of Wilmington and remitted payment. Accordingly, the City of Wilmington deposited that payment and credited the Property's account. Additionally, the City of Wilmington's own employee documented her belief that Wells Fargo was attempting to redeem this Property. Moreover, Wells Fargo represented that it had reached out to the Sheriff's Office and was told that the taxes were satisfied, and upon this reliance, took no further action.

---

[47] *City of Dover*, 880 A.2d at 246.

And upon learning that Quality Angels had the deed transferred into its name, Wells Fargo immediately filed the Motion to Intervene and the instant Motion to set aside the sale.

Wells Fargo actively reached out to the City of Wilmington multiple times to assert its interest, obtained a figure for payoff or redemption that was so specific that it admittedly could have only come from someone within the City. While the City is devoid of records for providing this figure, the monetary figure paid is credible as having come directly from the City of Wilmington and the testimony and the evidence presented by the Wells Fargo representative is reliable. While it is unfortunate that the electronic mail documentation of the redemption figure is no longer accessible, Wells Fargo, like the City, maintained case notes regarding this Property. Their notes are both credible and consistent with the testimony and their actions. The only reasonable inference that can be drawn from these facts is that Wells Fargo was attempting to redeem the Property and thought, albeit incorrectly to no fault of their own, that it had successfully done just that.

In assessing the totality of what occurred, any neglect of Wells Fargo is certainly excusable, for it was reasonable for Wells Fargo to have relied on the actions of the City of Wilmington depositing its payment in the very amount provided to it and the statement of the Sheriff's Office in informing it that the taxes were paid. What is not reasonable is for the City to not have alerted the Sheriff's Office that there was an attempt at redemption of the Property. Therefore, the Court now finds that any neglect on the part of Wells Fargo is excusable and sufficient to set aside the sale under Rule 60(b)(1).

Because any neglect present is excusable, and because the actions of the City of Wilmington amount to apathy, at the very least, it cannot be said that the Affidavit filed by the Sheriff's Office is valid. The Affidavit, which states that following "an

-13-

inspection of the books and records…there has been no attempt, nor any Act indicating an attempt to redeem said property…". [48]   While the Court understands that the Sheriff's Office is only attesting to and responsible for its own books and records, justice does not allow the City, who is a party to this action and initiated these proceedings, and who was aware of an attempt at redemption and seemingly did nothing with that information, to shield itself from setting aside a sale on this technicality.[49]   While it cannot be determined exactly where the fault lies, the fact remains that justice requires a finding that this Affidavit is incorrect.[50]

At the time of the sale, Wells Fargo held a $167,731.74 mortgage on the Property, which sold for less than that:  $146,000.00.  Further, Wells Fargo has paid $7,473.11 to credit the balance of the water fees owed on the Property, which further diminishes its value in the Property.  Accordingly, these facts – along with the totality of the facts that have been developed – form the basis for the Court's finding of both a mistake, as well as extraordinary circumstances existing here to set aside the sale itself under Rule 60(b)(6), as justice so requires.  To rule otherwise leaves Wells Fargo devoid of its substantial security interest in the Property.

## III.   AWARD OF COSTS AND FEES TO QUALITY ANGELS

This inequity in the proceeding makes it most unfortunate for Quality Angels.

---

[48]   D.I. 8.

[49]   *Jewell v. Division of Social Servs.*, 401 A.2d 88 (Del. 1979) (The Court may vacate a judgment under 60(b)(6) for "any other reason justifying relief" whenever such action is appropriate to accomplish justice.)

[50]   During the evidentiary hearing, as stated above in the facts, the City of Wilmington presented only two witness – both employees of the City.  No testimony was presented from the Sheriff's Office explaining how or why the Affidavit was filed.  The Court gave the City the opportunity post-hearing to supplement the record with a statement from the Sheriff's Office.   The Sheriff's Office did file a response to the Court, but did not provide any indication as to why this attempt at redemption was not a part of their records.  Therefore, the record is devoid of any facts one way or other on this point and the Court has no basis for form an opinion on such, nor is that the issue before the Court in the instant matter.

-14-

The Court acknowledges and sympathizes with Quality Angel's position and does not disagree that there is a strong public policy interest in favor of bonafide purchasers having finality of sales. It is truly unfortunate that here, due to the apathy of the City of Wilmington, that Quality Angels suffers a loss. There is certainly support in controlling authority for the Court's role in attempting to make Quality Angels whole and restore it to its status quo as a result of this action.[51] Because the Court has no information on the record before it, and without application, further development of the record is needed before the Court will make a final ruling as to what costs are to be assessed and by whom they are to be paid.

## IV.    MOTION TO STRIKE NOTICE OF LIS PENDENS DENIED

During the pendency of this litigation, Quality Angels filed a Motion to Strike Notice of the *Lis Pendens* that Wells Fargo lodged upon the Property. That motion was stayed pending the decision in this case, as the two rulings are co-dependent. As a result of this decision setting aside the sale, the Motion to Strike Notice of the *Lis Pendens* is **DENIED**. However, costs associated with that Motion may be awarded pursuant to Section III, above.

**NOW, THEREFORE, on this 9th day of August, 2022, the Motion of Wells Fargo Bank, N.A. to set aside the Sheriff's sale is GRANTED. Movant Wells Fargo, as well as Quality Angels, may petition the Court for any costs and fees sought pursuant to this Order and Plaintiff may respond as to the reasonableness of any costs sought.**

IT SO ORDERED.

*Danielle J. Brennan*

_____

Danielle J. Brennan, Judge

---

[51]    *LSF9 Master Participation Trust*, 2017 WL 8787509 at *3-4, citing *Burge*, 648 A.2d at 421-422; *The City of Dover*, 880 A.2d at 247 (citing Superior Court Civil Rule 60(b)).