# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ONE PIE INVESTMENT LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. N22L-12-041 SPL |
| | ) | |
| KINA WHITFIELD A/K/A | ) | |
| KINA LANE WHITFIELD | ) | |
| A/K/A KINA LANE | ) | |
| ENTERPRISES, LLC, a | ) | |
| CALIFORNIA LIMITED | ) | |
| LIABILITY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: January 16, 2026
Decided: April 16, 2026 (Date Corrected)

## MEMORANDUM OPINION

*Upon Defendant, Kina Whitfield A/K/A Kina Lane Whitfield A/K/A Kina Lane Enterprises, LLC's Motion to Set Aside Sheriff Sale,*
**DENIED.**

*Upon Plaintiff, One Pie Investment LLC's Motion to Confirm the Sheriff Sale,*
**GRANTED.**

Edward J. Fornias, III, Esq., LAW OFFICE OF EJ FORNIAS, P.A., Wilmington, Delaware, *Attorney for Plaintiff, One Pie Investments, LLC.*

Kina Lane Whitfield, *Self-Represented.*[1]

## LUGG, J.

---

[1] The Court informed Lane Whitfield throughout this litigation that, as a self-represented litigant, she may not represent artificial entities. *See Tigani on Behalf of Irrevocable Trust for Benefit of Tigani v. Director,* 2020 WL 5237278, at *2 (Del. Super. Ct. Sept. 2, 2020) (artificial entities must generally be represented by counsel). Despite being given time to do so, she has elected not to retain counsel on behalf of these entities. Nonetheless, in the interest of justice, the Court has considered the arguments as they may apply to all defendants in this case.

## BACKGROUND

On July 30, 2021, Kina Lane Enterprises ("Lane Enterprises") borrowed $150,000 from World Business Lenders, LLC ("WBL").[2] Lane Enterprises pledged a package of five residential properties as security for the loan;[3] Kina Lane Whitfield ("Lane Whitfield") signed as guarantor of the loan.[4]

Lane Enterprises failed to make payments under the loan and, on December 21, 2022, WBL filed a complaint in this Court to enforce the mortgage instrument.[5] The Court entered default judgment in favor of WBL and directed the New Castle County Sheriff to schedule the sale of the five properties.[6] The sale, scheduled for August 8, 2023, was stayed,[7] and the Sheriff subsequently rescheduled the sale for November 14, 2023.[8] The day before the November sale, to continue negotiating the outstanding debt, Lane Whitfield wired $20,000 to WBL; WBL postponed the sheriff's sale to the next available date.[9]

---

[2] D.I. 1, Ex. C at 6.

[3] *Id.* at 18; D.I. 1, Ex. A.

[4] D.I. 1, Ex. E.

[5] D.I. 1.

[6] D.I. 11.

[7] D.I. 12.

[8] D.I. 18.

[9] D.I. 32, Ex. 10.

Meanwhile, WBL learned that Goldsby Enterprises, LLC ("Goldsby Enterprises") was added to the deeds of four of the five pledged parcels and sought to vacate the Court's default judgment and amend the Complaint to add that entity as a defendant to perfect title.[10] The Court granted the motion.[11]

On March 11, 2024, WBL assigned the right to enforce the mortgage to One Pie Investment LLC ("OPI"),[12] and WBL and OPI stipulated to OPI's substitution as plaintiff in the case.[13] On March 18, 2024, OPI filed a motion under Superior Court Rule 60(b) seeking relief from the Court's order vacating the default judgment.[14] OPI posited the judgment did not need to be vacated to add Goldsby Enterprises as a defendant.[15] After hearing from the parties, the Court granted OPI's motion and reinstated its default order.[16]

After OPI secured a default judgment against all interested parties (including Goldsby Enterprises), the Sheriff scheduled a sale of the five properties for August 13, 2024.[17] The day before the sale, Lane Whitfield filed for Chapter 13

---

[10] D.I. 21 ¶¶ 3–5.

[11] D.I. 22.

[12] *See* D.I. 25; D.I. 96 ("Pl. Resp.") ¶ 5.

[13] D.I. 25.

[14] D.I. 27.

[15] *Id.* ¶ 9.

[16] D.I. 53.

[17] D.I. 62.

bankruptcy.[18]  This filing stayed the foreclosure proceedings until April 1, 2025, when the Bankruptcy Court dismissed Lane Whitfield's case without prejudice.[19] Then, on April 7, 2025, Goldsby Enterprises and Lane Enterprises sought bankruptcy relief under Chapter 11,[20] which again stayed these proceedings until the Bankruptcy Court dismissed the bankruptcy cases on June 5, 2025.[21]

This Court again directed the Sheriff to schedule the sale of the five properties,[22] and the Sheriff scheduled the sale for August 12, 2025.[23]  At 4:55 p.m. on the day before the scheduled sale, Lane Whitfield filed an Emergency Motion to Stay the Sheriff's Sale.[24]  The sheriff's sale proceeded as planned on August 12, 2025, and OPI purchased the five properties for a total of $380,000.[25]  At no point prior to the August 12, 2025 sheriff's sale did any defendant challenge the legitimacy of the underlying debt or the propriety of the default judgments secured by OPI.

---

[18] Pl. Resp., Ex. 1; D.I. 77 (Case No. 24-12293 BLS).

[19] D.I. 77.

[20] D.I. 79.

[21] D.I. 84.

[22] D.I. 83.

[23] D.I. 85.

[24] D.I. 88.

[25] D.I. 99.

Lane Whitfield filed a Motion to Set Aside the Sheriff Sale.[26]  On September 15, 2025, the Court heard argument on the motion and directed Lane Whitfield to provide the Court with valuations of the properties sold and to allow OPI access to the properties to conduct their own valuations.[27]  On November 13, 2025, OPI filed a Motion to Confirm the sale.[28]  On December 3, 2025, the Court heard oral argument on OPI's motion and deferred judgment to allow the parties to submit written argument on the properties' fair market value and their respective positions on how the Court should interpret the parties' valuations.[29]  This Order addresses both Lane Whitfield's Motion to Set Aside the Sheriff Sale and OPI's Motion to Confirm the Sheriff Sale.

## LEGAL STANDARD

"The Superior Court has broad discretion to confirm or set aside sheriff's sales."[30]  When reviewing a Sheriff's sale, the Court generally looks first to the adequacy of the price of the sale.[31]  "A sheriff's sale may be set aside . . . when the

---

[26] D.I. 93 ("Mtn. to Set Aside").

[27] D.I. 100, 102.

[28] D.I. 109 ("Mtn. to Confirm").

[29] D.I. 113.

[30] *Shipley v. New Castle*, 975 A.2d 764, 767 (Del. 2008) (citing *Burge v. Fidelity Bond and Mortgage Co.*, 648 A.2d 414, 420 (Del. 1994)) .

[31] *Burge*, 648 A.2d at 419.

sales price is so grossly inadequate that is shocks the conscience of the court."[32]  The

Superior Court engages in:

> special judicial scrutiny where a property sold at the sheriff's sale fails
> to secure a bid which represents at least fifty percent of its fair market
> value ("50% test").  If the fair market value of the property is over twice
> the sales price, the price is considered to be grossly inadequate,
> shocking 'the conscience of the court,' and justifying the setting aside
> of the sale.[33]

"Fraud, mistake, accident, impropriety, misconduct, surprise, or irregularity in the

sale process will [also] support judicial invalidation of the sale."[34]  "Thus, a properly

conducted sale should be set aside only when necessary to correct plain injustice,

consistent with principles of equity."[35]   This Court "man not arbitrarily or

capriciously refuse to confirm a sale, where there are no irregularities in the sale

proceedings and no fraud, unfairness, or other extraneous matter demonstrating

unfairness to one of the interested parties is shown."[36]

---

[32] *Id.*

[33] *Id.* (internal citations omitted).

[34] *Id.*

[35] *Id.* at 421.

[36] *Id.* at 420.

## ANALYSIS

The Court addresses the propriety of the sale of the pledged properties and, in doing so, considers both the valuation and Lane Whitfield's general assertions of fraud, impropriety, or misconduct. The Court confirms the sale.

## I.     Valuation of the properties

Lane Whitfield asserts that the total fair market value of the properties was $839,000.[37] Under her valuation, the properties sold for 45% of their fair market value.[38] Lane Whitfield's proposed value is derived by combining appraisals for two properties[39] with comparable sales estimates ("comps") of other properties sold between January and August of 2025 to estimate the values of the remaining three properties.[40] She also argues that the Court should consider the market price of each property individually, because the Court only considers the properties' package price when the properties are "massive, unique commercial" properties.[41]

OPI, using 2025 New Castle County tax-reassessments for the properties, asserts the fair market value of the properties is $753,300.[42] OPI contends that this

---

[37] D.I. 116 ("Def. Valuations") at 5.

[38] *Id.*

[39] *Id.* at 4.

[40] *Id.* at 4; D.I. 118 at 3.

[41] Def. Valuations at 6.

[42] Mtn to Confirm ¶¶ 9, 11.

figure inflates the properties' value because Lane Whitfield has described two of the properties as having "squatters" and being "unhealthy and uninhabitable."[43] Further, OPI argues that the 50% Rule "does not preclude the acceptance of a lesser figure if warranted under the particular conditions and facts of that case."[44] OPI argues the Court should assess the properties as a package because Lane Enterprises mortgaged the properties as a package.[45]

The five properties were sold as a package for $380,000.[46] Whether this figure is more or less than half of the value of the properties hinges on which parties' valuation the Court accepts. As a general rule, properties at a sheriff sale are sold separately, however:

> several separate and distinct lots or parcels of real estate, may under certain circumstances, be sold as one parcel. This is true when for lack of bidders the parcels cannot be sold separately or . . . when they clearly can be sold more advantageously as one tract or parcel.[47]

Lane Enterprises mortgaged the properties as a package,[48] and the Court's research reveals no restriction on a packaged sale. Thus, the Court will consider the

---

[43] Pl. Resp. ¶ 17, Ex. 1.

[44] D.I. 114 ("Def. Memo") at 4.

[45] D.I. 117 ("Pl. Resp. to Memo") ¶ 4.

[46] D.I. 99.

[47] *In re Roach*, 130 A. 676, 677 (Del. Super. Ct. 1925).

[48] Pl. Resp. to Memo ¶ 4.

valuations of the properties, sold as a package at the August 2025 sheriff's sale, under the 50% Test.

In 2025, "for the first time in over 40 years," New Castle County reassessed the values of properties located within the county.[49] Under 9 *Del. C.* § 8306, property subject to county tax are to "be assessed at its fair market value as of the date of the most recent reassessment."[50] And, "[i]t is the fair market value of the property at the time of the Sheriff's sale that controls the analysis."[51] At the time of the August 2025 sheriff sale, the tax re-assessment provided the most objective and timely estimate of the properties fair market value.

The New Castle County tax re-assessments deemed the fair market value of the properties to be $753,300. The package of properties sold at sheriff sale for $380,000, or 50.4% of the county-assessed marked value. While, on the record before it, the Court cannot account for the diminished value resulting from "squatters," health conditions, or inhabitability, the properties were sold to the highest bidder at a public auction. Under the record presented, the Court does not find the purchase price of the properties to shock the conscience of the Court.

---

[49] NEW CASTLE COUNTY GOVERNMENT, https://www.newcastlede.gov/m/newsflash/home/detail/2543 (last visited Apr. 15, 2026).

[50] 9 Del. C. § 8306(a).

[51] *Wilmington Savings Fund Society, F.S.B. v. Pearce*, 2026 WL 226712, at *6 (Del. Super. Ct. Jan. 28, 2026) (citations omitted).

## II.     Considerations Beyond Sales Price

The Court will also consider whether fraud, mistake, accident, misconduct, surprise, or irregularity compel judicial invalidation of the sale.[52]   The Court provided Lane Whitfield ample opportunity to retain counsel, develop her claims, and abide by Court orders.[53]  But Lane Whitfield has failed to avail herself of these opportunities.  While the Court affords some leeway to self-represented litigants, "there is no different set of rules for *pro se* [parties]."[54]  The Court recognizes the challenges faced by *pro se* litigants, but it cannot "sacrifice the orderly and efficient administration of justice to accommodate the unrepresented [party]"[55] or impair "the substantive rights of those parties involved in the case at bar."[56] Lane Whitfield's unsubstantiated claims do not warrant invalidation of the sale.

Lane Whitfield contends: (1) WBL and OPI engaged in deceptive practices regarding payoff negotiations and the transfer/assignment of the loan;[57] (2) WBL

---

[52] *Burge*, 648 A.2d at 419.

[53] D.I. 100, 102, 113.

[54] *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011) (quoting *Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001)).

[55] *Damiani v. Gill*, 2015 WL 4351507, at *1 (Del. July 15, 2015) (quoting *Draper*, 767 A.2d at 799); *see also, Sloan v. Segal*, 2008 WL 81513, at *7 (Del. Ch. Jan. 3, 2008) (cleaned up) ("[S]elf-representation is not a blank check for defect.").

[56] *Alston v. State*, 2002 WL 184247, at *1 (Del. Super. Ct. Jan. 28, 2002).

[57] Mtn. to Set Aside § IV, ¶ A.

breached the implied covenant of good faith and fair dealing;[58] (3) her former attorney, Brian T. Murray, inappropriately communicated with adverse parties;[59] (4) both she and her tenants did not receive proper notice of the sheriff sale;[60] and (5) proceeding with the sheriff sale before adjudicating a related civil action will irreparably prejudice that case.[61]

Lane Whitfield does not contest that she, or her affiliated companies, failed to meet their repayment obligations; to the contrary, she acknowledges the existence of a debt and the inability to meet the contractual repayment obligations. Nor does she contest the validity of the default judgments entered against all entities.[62] And, most importantly, her only challenge to the propriety of the sheriff's sale focuses on the notice provide to her and her tenants. She offered no evidence that any individual or entity engaged in conduct warranting invalidation of the sale. Her efforts to

---

[58] Mtn. to Set Aside § IV, ¶ B.

[59] Mtn. to Set Aside § IV, ¶ C.

[60] Mtn. to Set Aside § IV, ¶ D.

[61] Mtn. to Set Aside § IV, ¶ E.

[62] Lane Whitfield is precluded from asserting challenges or defenses to the entry of the default judgment in her challenges to the confirmation process. *See Gibbs v. Fairbanks Capital Corp.*, C.A., 2006 WL 3377925, at *2 (Del. Super. Ct. Nov. 20, 2006) (Court denied defendant's assertion of defenses to bar damages where defenses were not properly and timely raised in the proceeding leading to the judgment).

negotiate the debt proved unsuccessful, and she found no relief in bankruptcy, and she offers no recognized basis to unsettle the public sale of the pledged properties.

Lane Whitfield and her tenants received notification of the sheriff sale. Lane Whitfield was personally served with notice of the foreclosure proceedings,[63] and WBL mailed her a copy of the Complaint along with all exhibits and attachments.[64] Another letter was sent from OPI to Lane Whitfield through certified mail which included a copy of the Summons, Complaint, and Answer.[65] A copy of the "Notice to Lien Holders, Tenants, Record Owners, and Persons having an Interest of Sheriff's Sale of Real Estate" was posted on the common entrance of the five properties prior to the attempted sheriff sale and posters advertised the sale.[66] "Under Superior Court Civil Rule 69(g), a mortgagee demonstrates adequate notice by showing that the mortgagor had actual or constructive knowledge of the sheriff's sale."[67] OPI provided actual notice to all interested parties, and Lane Whitfield's repeated, last-minute efforts to thwart the sales demonstrate her awareness – constructive knowledge – of the sale.

---

[63] D.I. 3.

[64] D.I. 4, ¶¶ 1–3.

[65] D.I. 43.

[66] D.I. 17 (rescheduled), 62 (rescheduled), 69 (rescheduled), 76 (rescheduled), 85 (completed sale).

[67] *Deutsche Bank Nat. Trust Co. v. Goldfeder*, 2014 WL 644442, at *2 (Del. Feb. 14, 2014).

## CONCLUSION

Under the circumstances here, the Court finds that the properties sold for slightly greater than 50% of their fair market value when applying the objective valuations calculated by the 2025 New Castle County assessment. And the Court does not find any of Lane Whitfield's other claims warrant invalidation of the sale. She may not use confirmation proceedings to challenge the underlying judgment, and the evidence overwhelmingly establishes that all interested parties were notified of the sales. For these reasons, OPI's Motion to Confirm the Sheriff Sale is **GRANTED**, and Lane Whitfield's Motion to Set Aside the Sheriff Sale is **DENIED**.

SO ORDERED

_____
Sean P. Lugg, Judge

12