# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MIDFIRST BANK, )
                              )
         Plaintiff, )
                              )
     v. )     C.A. No. K21L-06-005 NEP
                              )
CATHERINE MULLANE, )
                              )
        Defendant. )

Submitted: August 30, 2022
Decided: September 26, 2022

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Defendant's Motion to Reopen, Rescind and Set Aside Sheriff's Sale*

**GRANTED**

John E. Tarburton, Esquire, and Melanie J. Thompson, Esquire, Orlans PC, Wilmington, Delaware, *Attorneys for Plaintiff*.

Catherine Mullane, *Pro Se Defendant*.

**Primos, J.**

Before this Court is the motion of Catherine Mullane (hereinafter "Mullane") to reopen the foreclosure action and set aside the sheriff's sale, styled as a "Motion to Reopen, Rescind and Set Aside Sale" (hereinafter the "Motion"). Mullane asserts two grounds for her motion: 1) that she lacked notice of the *Scire Facias Sur* Mortgage (hereinafter "foreclosure") complaint of Plaintiff MidFirst Bank (hereinafter "MidFirst"), and 2) that she lacked notice of the subsequent sale of her property.[1] The Motion also raises the issue of whether the default judgment entered against her in the underlying foreclosure action must be vacated. For the reasons that follow, the Motion is **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

For a portion of the COVID-19 pandemic, the United States Postal Service (USPS) modified its policy regarding return receipts for certified mail, instructing carriers to avoid face-to-face contact with recipients and to record their names from a safe distance.[2] While not formally part of the policy, this practice resulted in some instances of postal carriers signing the receipts themselves with a "C19" or "Covid 19" notation.[3]

In June of 2021, while this USPS policy was in effect, MidFirst filed a

---

[1] Mullane also contends that the lessee of the property was not properly noticed. However, it is well established by Delaware law that a party does not have standing to challenge a sale on behalf of other interested persons who are not part of the suit. *Emory Hill & Co. v. Mrfruz LLC*, 2013 WL 5347519, at *9 (Del. Super. Sept. 24, 2013) (stating that lienholder, which had brought suit, did not have standing to argue that plaintiff had failed to notify two additional lienholders (citing *Dumler v. Mabe,* 1979 WL 193424, at *1–2 (Del. Super. July 5, 1979) (holding that buyers lacked standing to "contest the validity of the foreclosure sale based on a lack of notice to lienholders," and noting that deprivation of property without due process carries constitutional protections and "[t]he authority is overwhelming that constitutional rights are personal and may not be asserted vicariously."))), *aff'd sub nom. Christiana Mall, LLC v. Emory Hill & Co.*, 90 A.3d 1087 (Del. 2014).

[2] *CUC Properties VI, LLC v. Smartlink Ventures, Inc.*, 178 N.E.3d 556, 558 (Ohio Ct. App. 2021) (citing United States Postal Service, *Covid-19 Continuity of Operations Update* (Mar. 20, 2021), https://about.usps.com/newsroom/service-alerts/pdf/usps-continuity-of-operations-03-20-2020.pdf (accessed Sep. 16, 2021)).

[3] *Id.*

complaint against Mullane initiating a foreclosure action regarding the property she owned at 193 New Castle Avenue, Felton, Delaware (hereinafter "the property").[4] Several days later, MidFirst sent—via certified mail—the Complaint and Notice to all lienholders and tenants, including the owner, Mullane, in accordance with Superior Court Civil Rule 4(f)(4).[5] However, the return receipt for the article addressed to "Catherine Mullane, 1992 Mississippi Avenue Englewood, FL 34224" had only "Covid 19" [sic] handwritten on the signature line.[6] Of the two boxes next to the signature line, one labelled "Agent" and the other labelled "Addressee," it is unclear which box was intended to be marked.

In September 2021, MidFirst filed a "Long Arm" Amendment to the Complaint to "show proof of the above Defendant Catherine Mullane's non-residence of the State of Delaware and the sending of a copy of the complaint and notice pursuant to 10 *Del. C.* § 3104(d) [the subsection of Delaware's long-arm statute governing service of process for out-of-state-defendants] has occurred."[7] Exhibits to the Amendment to the Complaint show that MidFirst had resent the

---

[4] D.I. 1 (Compl.). MidFirst's filing included a Praecipe, which stated: "PLEASE ISSUE A WRIT OF SCIRE FACIAS SUR MORTGAGE TO PLAINTIFF'S COUNSEL, ORLANS PC to serve upon the Defendant, Catherine Mullane at 1922 Mississippi Avenue, Englewood, FL, 34224, via certified mail pursuant to the revised Long Arm Statute." D.I. 1 (Praecipe). The writ was signed and sealed by the court, D.I. 2, but was never acted upon by the sheriff.

[5] D.I. 7, Ex. A (Lien Holder Notices), Ex. B (Certified Receipts).

[6] *Id.* Ex. C (Proof of Delivery with Covid 19 notation).

[7] D.I. 4 (Amendment to the Complaint). The amended complaint was filed to comply with Sup. Ct. Civ. R. 4(h), which reads as follows:

> **Actions in Which Service of Process Is Secured Pursuant to 10 Del. C. § 3104, § 3112 or § 3113.** In an action in which the plaintiff serves process pursuant to 10 Del. C. § 3104, § 3112 or § 3113, the defendant's return receipt and the affidavit of the plaintiff or the plaintiff's attorney of the defendant's nonresidence and the sending of a copy of the complaint with the notice required by the statute shall be filed as an amendment to the complaint within 10 days of the receiving by the plaintiff or the plaintiff's attorney of the defendant's return receipt; provided, however, that the amendment shall not be served upon the parties in accordance with the provisions of Rule 5(a).

complaint by certified mail to "Catherine Mullane, 1992 Mississippi Avenue Englewood, FL 34224" (the same address used in June 2021) by certified mail, but the return receipt was once again signed with the notation "Covid 19" [sic], and this time, the box was clearly marked "Agent" rather than "Addressee."[8] The Affidavit of Mailing filed in support of the Long Arm Amendment, and signed by MidFirst's counsel, acknowledged that "[t]he notice was . . . marked 'COVID 19.'"[9]

Along with the Amendment to the Complaint, MidFirst filed an Alias Praecipe with the Court instructing it to "PLEASE ISSUE A WRIT OF SCIRE FACIAS SUR MORTGAGE TO THE SHERIFF OF KENT COUNTY, to serve upon Catherine Mullane at 193 New Castle Avenue Felton, DE 19943 [and] if service is unsuccessful, please post and mail the writ to the above address."[10] On October 8, 2021, the Sheriff of Kent County affirmed that he: 1) "posted a certified copy of the alias Writ of Scire Facias on the subject property"; and 2) that he mailed "a certified copy of the alias Writ of Scire Facias by both certified mail return-receipt requested and by first class mail" to the address of the property, 193 New Castle Avenue Felton, DE 19943.[11]

Mullane did not appear in court to defend the foreclosure action, and maintained in her pleadings and at oral argument that she never received the notices and only learned of the action after the property was sold.[12] MidFirst filed a Direction for Entry of Judgment by the prothonotary, pursuant to Superior Court

---

[8] D.I. 4 Ex. B (Certified Mail Receipt), Ex. C. (Proof of Delivery with Covid 19 notation).
[9] D.I. 4 (Affidavit of Mailing).
[10] D.I. 3 (Alias Praecipe).
[11] D.I. 6 (Sheriff's Return).
[12] D.I. 12 (Mot. to Reopen, Rescind and Set Aside Sale) at 1 [hereinafter "Motion"]; Oral Arg. Tr. at 6:1–7, 31:6–8.

Civil Rule 55(b)(1),[13] in November 2021.[14]  In January of 2022, Plaintiff filed a Levari Facias directing the Sheriff to sell the property,[15] which was signed and sealed by the Court.[16]  The sheriff's sale was scheduled for March 3, 2022, and Plaintiff filed a proof of mailing of the notice to all interested parties.[17]  This notice and the attached receipt shows that the notice of sale directed to Catherine Mullane was sent to "1922 Mississippi Avenue Englewood, FL 34224"[18]—the same address that had come back with the "Covid 19"-marked return receipts on two prior occasions.

On April 6, 2022, after the sale of the property had taken place, Mullane filed the Motion.[19]  On April 29, 2022, Plaintiff filed a response opposing the Motion.[20] The Court held oral argument on August 12, 2022.  After a review of the pleadings, briefs, and statements at oral argument, this matter is ripe for decision.

---

[13] Sup. Ct. Civ. R. 55(b)(1) provides in relevant part:
> When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the Prothonotary upon written direction of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has failed to appear in accordance with these Rules unless the defendant is an infant or incompetent person.

[14] D.I. 7 (Direction for Entry of Judgment and Affidavit).  An Amended Direction for Entry of Judgment was filed in December 2021 to correct judgment figures. D.I. 8 (Amended Direction for Entry of Judgment and Affidavit).

[15] D.I. 9 (Levari Facias).

[16] D.I. 10.

[17] D.I. 11 (Proof of Mailing), Ex. A (Notice of Sheriff's Sale with Sheriff's Ad).

[18] *Id.* Ex. B (Certified Mail Receipts).  One item was also addressed to Catherine Mullane at the address of the property, 193 New Castle Avenue Felton, DE 19943.

[19] D.I. 12 (Motion).  Mullane filed the Motion within the period prescribed by the Rules after which the sale would have been confirmed as a matter of course by the Court.  *See* Super. Ct. Civ. R. 69 ("Return of sheriff's sales of real estate shall be made on the third Monday of the month succeeding the date of the sale and applications to set aside such sales shall be made on or before the first Thursday succeeding said return date, and all such sales not objected to on or before the first Thursday, shall on the first Friday, be confirmed as a matter of course.").

[20] D.I. 13 (Resp. to Def.'s Mot. to Reopen, Rescind and Set Aside Sale).

## II. ANALYSIS

The Court has "broad discretion to confirm or set aside sheriff's sales."[21] This power is rooted in "the inherent control of the court over its own process 'for the correction of abuses or the prevention of injury.'"[22] The Court "may not arbitrarily or capriciously refuse to confirm a sale, where there are no irregularities in the sale proceedings and no fraud, unfairness, or other extraneous matter demonstrating unfairness to one of the interested parties is shown."[23] However, failure to serve properly and failure to give notice to the interested parties of the sheriff's sale are both recognized grounds for which such sales may be set aside.[24] In this case, the Court must consider 1) whether service of process by certified mail is sufficient when the return receipts are marked "Covid 19" instead of with a signature and 2) whether notice of the sale itself is sufficient when sent to that same address.

After careful consideration of the full record, briefings, and positions in oral argument, the Court finds that the sheriff's sale must be set aside for two independent reasons, each of which would be sufficient on its own. First, service of process of the initial *scire facias* complaint, which initiated the foreclosure proceeding and ultimately led to the sheriff's sale of the property, was insufficient. Second, the notice of the sheriff's sale itself failed to comply with the specific procedural requirements of Superior Court Rule 69(g).

---

[21] *Shipley v. New Castle Cnty.*, 975 A.2d 764, 767 (Del. 2009) (citing *Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 420 (Del. 1994)).

[22] *Burge*, 648 A.2d at 420 (quoting *Petition of Seaford Hardware Co.*, 132 A. 737, 738 (Del. Super. 1926)).

[23] *Id.*

[24] *See, e.g.*, *Household Bank, F.S.B. v. Daniels*, 2005 WL 1953035, at *2 (Del. Super. July 14, 2005) ("Failure to provide notice of the sale, either through the Sheriff or through advertising the sale 'are perhaps among the most usual grounds on which sales are set aside.'" (citation omitted)); *Udo v. Fed. Home Loan Mortg. Corp.*, 119 A.3d 43, 2015 WL 4425779, at *2 (Del. 2015) (TABLE) ("[U]do's only cognizable claim in light of the confirmation of the sale was his allegation of improper notice.").

In addition, the Court finds that insufficient service of process is grounds to vacate the default judgment entered against Mullane.

## A. Improper Service

The first issue in this case is improper service of the *scire facias* complaint. There are two separate mechanisms to effectuate proper service of a *scire facias* complaint. The first would have been to serve Mullane "constructively" under Rule 4(f)(4),[25] which provides that "[i]n actions begun by scire facias, 2 returns without service of 2 consecutive writs . . . shall constitute legal and sufficient service." Stated otherwise, Rule 4(f)(4) provides that "in a foreclosure proceeding, service is complete upon the return of two consecutive writs along with the certification by the sheriff that he has posted a copy of the alias writ on the subject property and has mailed a copy of the alias writ by both certified mail and first class mail to the **last known address of the defendant**."[26] In this case, although two writs of *scire facias* appear to be signed by the Prothonotary,[27] the sheriff apparently only acted upon and returned one as undeliverable.[28] Without returns on two writs, the Court cannot deem service "constructively" sufficient under Rule 4(f)(4).

The second path is to complete service in accordance with Delaware rules and statutes. In this case, MidFirst was guided by Delaware's long arm statute, 10 *Del. C.* § 3104, which specifies the ways in which a plaintiff may serve an out-of-state resident, providing in pertinent part:

> (d) When the law of this State authorizes service of process outside the State, the service, when **reasonably calculated to give actual notice**,

---

[25] *Shipley v. First Fed. Sav. & Loan Ass'n of Delaware*, 619 F. Supp. 421, 428, 437–38 (D. Del. 1985) (noting that Rule 4(f)(4) provides a means of "constructively" achieving service of process, but holding that due process still requires a "reasonably calculated" attempt to give actual notice to the mortgagor of the sheriff's sale).

[26] *Church v. Bank of New York*, 959 A.2d 27, 2008 WL 4455552, at *2 (Del. 2008) (TABLE) (emphasis supplied).

[27] D.I. 2 and D.I. 5.

[28] D.I. 6 (Sheriff's Return).

may be made:

(1) By personal delivery in the manner prescribed for service within this State.

(2) In the manner provided or prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction.

(3) **By any form of mail addressed to the person to be served and requiring a signed receipt.**

(4) As directed by a court.

(e) Proof of service outside this State may be made by affidavit of the individual who made the service or in the manner provided or prescribed by the law of this State, the order pursuant to which the service is made, or the law of the place in which the service is made for proof of service in an action in any of its courts of general jurisdiction. **When service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the court.**

10 *Del. C.* § 3104(d) (emphasis supplied).

Thus, since MidFirst attempted service by mail pursuant to 10 *Del. C.* § 3104(d)(3), 10 *Del. C.* § 3104(e) requires that either 1) the mail is signed by the addressee (in this case Mullane) or 2) there is "other evidence of personal delivery to the addressee satisfactory to the court." In this matter, the signature requirement is not met because the return receipt is signed with the notation "Covid 19" rather than Mullane's signature, and the "agent" box is checked rather than the "addressee" box. For these reasons, the Court finds that the return receipt is not "signed by the addressee" within the meaning of the long-arm statute.

Absent a signature, the statute requires other evidence "satisfactory to the court." Such evidence is lacking here, particularly in light of the parties' representations at oral argument. There, Mullane stated without reservation, albeit not by sworn testimony, that she had not received the certified mail and would never

8

allow anyone to receive (or sign) mail addressed to her.[29]  She also stated that she did not live at the Florida address used for the certified mailings during the relevant time periods, and that MidFirst could have easily called or emailed her, as MidFirst had been a named defendant in a separate action in federal court.[30]

MidFirst responds that it received two signed receipts, although it acknowledged in the Affidavit of Mailing filed with the Long Arm Amendment that the September 2021 receipt "was . . . marked 'COVID 19.'"[31]  These notations negate any possibility that the markings could be construed as Mullane's signature.[32]

Here, the only "other evidence of personal delivery" offered by MidFirst are these "Covid 19" notations on the return receipts.  The Court of Appeals of Ohio, in *CUC Properties VI, LLC v. Smartlink Ventures, Inc,* when faced with a similar dilemma, stated:

> To reduce health risks during the pandemic, the postal service modified mail procedures for services that normally required carriers to venture in close proximity to customers. . . . In lieu of face-to-face signatures, USPS instructed its carriers to maintain a safe distance, **ask the recipient for their first initial and last name, enter that information on the return receipt**, and then have the customer step back while the employee placed the mail in an appropriate place.[33]

---

[29] Oral Arg. Tr. at 31:6–19.

[30] *Id.* at 7:17–19, 14:11–17.

[31] D.I. 4 (Affidavit of Mailing).

[32] Some courts have allowed representative copies of an adverse party's signature and conducted evidentiary hearings to determine whether an adverse party was actually notified of a proceeding and whether the signature was authentic. *See, e.g.*, *Progressive Direct Ins. Co. v. Williams*, 186 N.E.3d 337, 342 (Ohio Ct. App. 2022) ("Williams's sworn statement along with the certified-mail receipt marked 'C19' is sufficient evidence to merit a hearing during which the trial court can more fully explore whether the plaintiffs met their burden of showing whether proper service occurred in this case and, if so, whether Williams can rebut the presumption that he was properly served."). However, the parties to this case have not requested an evidentiary hearing, and the Court does not deem such further inquiries necessary.

[33] *CUC Properties*, 178 N.E.3d at 558 (emphasis supplied) (citing United States Postal Service, *Covid-19 Continuity of Operations Update* (Mar. 20, 2021), https://about.usps.com/newsroom/service-alerts/pdf/usps-continuity-of-operations-03-20-2020.pdf (accessed Sep. 16, 2021)).

…

When the carriers in this case marked "Covid 19" or "C19" on the return receipt, they assumed the role of both the deliverer and the recipient. **By extension, the mail carrier is the only person we can say with certainty knew the certified mail even existed**. . . . No matter how creatively we construe 'Covid 19' or 'C19,' those notations **do not comport with any common understanding of 'signed' or 'signature.'"[34]**

This Court finds this reasoning persuasive.[35]  Similar to the facts in *CUC Properties*, the return receipt does not contain Mullane's first initial and last name.  Thus, it appears that USPS protocol, requiring that the postal carrier ask the addressee's first

---

[34] *Id.* at 560 (emphasis supplied). *See also Finnell v. Eppens*, 2021 WL 2280656, at *6 (S.D. Ohio June 4, 2021) ("[T]he signature issue presents a problem. The Court is unable to locate any specific Ohio law implementing a modification to the signature requirement based on COVID-19. Thus, while 'any person' may be broad, the Court cannot be confident that it would extend to a mail carrier's signature.").

[35]  The Court independently takes judicial notice of the March 20, 2020, USPS update that was referenced in *CUC Properties*.  United States Postal Service, *Covid-19 Continuity of Operations Update, Customer Signature Service COVID-19 Response and Prevention* (Mar. 20, 2021), https://about.usps.com/newsroom/service-alerts/pdf/usps-continuity-of-operations-03-20-2020.pdf (accessed Sept. 14, 2022).  In doing so, the Court notes that the March 20 update does not indicate whether USPS personnel should write the initials of the recipient on the return receipt as the *CUC Properties* court indicated.  However, an update that came three days later from USPS does indicate that "employees will request the customer's first initial and last name **so that the employee can enter the information on the electronic screen or hard copy items such as return receipts** . . ." United States Postal Service, *Covid-19 Continuity of Operations Update, Safety of the Mail*, (Mar. 23, 2020), https://about.usps.com/newsroom/service-alerts/pdf/march-23-safety-of-mail.pdf (accessed Sept. 14, 2022) (emphasis supplied).  This protocol was "rescinded" effective March 31, 2022, and USPS personnel are now required to "capture [the] customer's signature for special services mail if a signature is required." United States Postal Service, *Industry Alert, Customer Signature* (May 6, 2022), https://postalpro.usps.com/node/10948, (accessed Aug. 29, 2022).  Thus, the Court takes judicial notice of the information found on this government site because that information can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." D.R.E. 201(b)(2)); *see also*, *e.g.*, *Lacy v. Bayhealth Med. Ctr., Inc.*, 2022 WL 1670042, at *2 n.17 (Del. Super. May 25, 2022) (taking judicial notice of government pages that included those from *Tricare.mil* and *Medicaid.gov*); *Stafford v. State*, 2012 WL 691402, at *1 n.2 (Del. Mar. 1, 2012) (taking judicial notice of contents of a state government website).

initial and last name to confirm receipt by the proper recipient, was not followed.[36]

Moreover, "other evidence of personal delivery" deemed satisfactory in Delaware has been evidence of actual notice. For example, in *Maldonado v. Matthews* the Court found that "two Proofs of Non–Receipt with this Court and . . . a voicemail from Defendant demonstrating that service had been received[]" was evidence satisfactory to the court to find sufficient service.[37] Subsequently, in *Doherty and Associates, Inc. v. People First Insurance., Inc.* the Court found that a phone call indicating that defendant was aware of the complaint against him and had received it in the mail—even though the sender mistakenly designated it "No Signature Required"—was sufficient other evidence to deem service complete.[38]

Unlike these cases, there is nothing here that would support a finding that Mullane was aware of this proceeding (*e.g.,* a phone call or a voicemail). In her briefings and statements at oral argument, Mullane maintains that the first time she was aware of this action, and of the sale of the property, was on March 9, 2022, when she received a text from a recovery group seeking to help her recover the leftover equity portion after the sale.[39] Hence, while the facts in this matter bear some resemblance to those in *Doherty*—although MidFirst did request a signed receipt from USPS, there was no *effective* signature requirement because of USPS protocols—unlike *Doherty¸* the crucial element of "other evidence" (in *Doherty*, the phone call discussing the suit) is absent. Thus, the Court is not satisfied that "other evidence" supports a finding of sufficient service of process.

---

[36] *CUC Properties.*, 178 N.E.3d at 561 ("In this scenario, the return receipt lacked the requisite first initial and last name dictated by the USPS internal memorandum. As a result, that guidance has no bearing on our analysis.").

[37] 2010 WL 663723, at *4 (Del. Super. Feb. 23, 2010).

[38] 2018 WL 1446412, at *3 (Del. Super. Mar. 22, 2018), *aff'd*, 201 A.3d 1196 (Del. 2019) (TABLE).

[39] D.I. 12 (Motion) at 1; Oral Arg. Tr. at 6:3–7, 7:19–23.

**B. Improper Notice of Sheriff's Sale**

Even if service of process in the underlying foreclosure action had been proper, MidFirst failed to comply fully with the provisions of Superior Court Civil Rule 69(g), which sets out the specific notice requirement for any sheriff's sale of real estate. This Court has previously held that Rule 69(g) requires that plaintiffs be reasonably diligent in their efforts to ascertain the addresses of property owners.[40] Specifically, such a duty is escalated when "certified mailings [are] consistently returned."[41]

Under Rule 69(g), "proof of *sending* notice is required, [but] proof of *actual* notice is not."[42] However, "due process . . . does favor [actual notice] whenever possible."[43] In this case, MidFirst could not clearly articulate where it obtained the Florida address that it used as Mullane's throughout the course of litigation—it was neither from a Lexis search nor from the referral.[44] And although the certified mail was not "consistently returned," it was consistently signed in a manner that did not indicate one way or another whether Mullane had actually received it.

In the Court's view, sending two items of certified mail to an address outside of the state, and receiving two certified receipts with the notation "Covid 19," does not constitute a sufficient effort to "reasonably ascertain" the correct address of the record owner of the property. Rule 69(g)(v) separately requires that when an address is not reasonably ascertainable, the affidavit filed in court with the notice of the sale must include "a description of the reasonably diligent efforts that were made to ascertain such . . . address." Here, nothing in the affidavit, the pleadings, or

---

[40] *Household Bank*, 2005 WL 1953035, at *2.
[41] *Id.* at *3.
[42] *1880 Superfine Lane Condo. Ass'n v. McCollister*, 2020 WL 58295, at *2 (Del. Super. Jan. 6, 2020) (emphasis in original).
[43] *Shipley*, 619 F. Supp. at 437.
[44] Oral Arg. Tr. at 27:16–28:11.

representations from MidFirst's counsel during oral argument suggest that there were any further efforts, beyond the "Covid 19" notations, to verify that Mullane was on notice or, at the least, that the address was correct. Therefore, MidFirst failed to make reasonable efforts to ascertain Mullane's address, and mailing the notice of the sale to "1992 Mississippi Avenue Englewood, FL 34224" was insufficient to satisfy the notice requirement of Rule 69(g).

## C. Default Judgment

Having concluded that service of process of the foreclosure complaint and notice of the sheriff's sale were both insufficient, there remains the issue of MidFirst's direction of entry of default judgment against Mullane.[45] Mullane stated in her motion that "[a] default judgment was apparently entered because Defendant had no service of process" and in her prayer for relief that "**the case should be reopened** and the sale of subject property [sic] rescinded and set aside."[46] The Court construes this as a motion to vacate the default judgment as void pursuant to Superior Court Civil Rule 60(b)(4), which provides in relevant part that "[o]n motion and upon such terms as are just, the Court may relieve a party . . . from a final judgment" if "the judgment is void."[47]

A judgment is void if entered against a defendant who did not receive sufficient service of process.[48] Moreover, a void judgment is "legally ineffective

[45] *See* D.I. 8 (Direction for Entry of Judgment and Affidavit - Amended), filed on December 23, 2021.

[46] D.I. 12 (Motion) at 1, 5 (emphasis supplied).

[47] "*Pro se* pleadings generally are construed more liberally than counseled ones." *Tigani v. Fisher Dev. Co.*, 2022 WL 1039969, at *2 (Del. Super. Apr. 6, 2022). However, even if Mullane's motion was not requesting relief from the default judgment, the Court would consider it necessary to address this issue in light of the finding of insufficient service of process.

[48] *See Massey v. Nationwide Assurance Co.*, 2018 WL 4692488, at *3 (Del. Super. Sept. 28, 2018) ("Whether the default judgment entered in this case was void for lack of personal jurisdiction necessarily requires a review regarding service of process and the issue of notice."); *Taylor v. Hatzel & Buehler*, 258 A.2d 905, 908 (Del. 1969) ("Void judgments are defined in terms of exceeding jurisdiction over the parties or subject matter; improper notice; no delegation of power

from its inception" and thus, unlike other grounds of relief under Rule 60(b), requires no showing of a meritorious defense in order to obtain relief.[49] Finally, unlike the defendant in *Massey*, Mullane did not wait years to object to the entry of default judgment[50]—she filed this motion within months of the entry of default judgment and within weeks of the subsequent sale. For the reasons stated in section II.A of this opinion, the Court finds that there was insufficient service of process and that the default judgment against Mullane must therefore be vacated.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Reopen, Rescind and Set Aside the Sheriff's Sale is **GRANTED**. The sheriff's sale is hereby set aside and the default judgment against Mullane is vacated.

In addition, the Court concludes that, because there was never sufficient service of process, MidFirst has not satisfied the 120-day time limit for service after filing of the complaint.[51] However, in light of the unusual circumstances brought on by the COVID-19 pandemic and MidFirst's apparent good-faith but mistaken reliance on the return receipts provided by USPS, the Court finds "good cause why such service was not made within that period . . ."[52] MidFirst is thus allowed 120

---

by the State; **no valid service of process**, and failure to sit at a time and place as required by law.") (emphasis supplied).

[49] *C.I.T. Grp./Equip. Fin., Inc. v. Chaney*, 1991 WL 18092, at *1 (Del. Super. Feb. 8, 1991)

[50] *Massey*, 2018 WL 4692488, at *3–4 (rejecting argument that "lapse of time is irrelevant" to a motion to vacate a judgement).

[51] Super. Ct. Civ. R. 4(j) ("If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.").

[52] *Id.* "Good cause" is not defined by the rule, but has been construed "to require a showing of excusable neglect by a 'demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules . . .'" *Doe v. Catholic Diocese of Wilmington, Inc.*, 2010 WL 2106181, at *2 (Del. Super. May 26, 2010) (quoting *Dolan v. Williams*, 707 A.2d 34, 36 (Del.1998)). "Whether a party's failure to act constitutes excusable neglect is a matter of judicial discretion." *Id.*

days from the entry of this order to serve Mullane properly with the foreclosure complaint.

**IT IS SO ORDERED.**


_____
Noel Eason Primos, Judge


NEP:tls
*Via File & ServeXpress*
oc:     Prothonotary
cc:     Counsel of Record
        Catherine Mullane - *Via U.S.P.S.*