Mary J. Karel, complainant-respondent,

*v.*

Edward L. Davis, defendant-appellant.

[Submitted May term, 1937—Decided October 26th, 1937.]

*Messrs. Howe & Davis (Mr. William Howe Davis,* of counsel), for the appellant.

*Mr. Andrew B. Crummy,* for the respondent.

The opinion of the court was delivered by

HEHER, J.

Defendant is the obligor on the bond secured by the mortgage under foreclosure. He complains of an order refusing, upon the ground of mistake, confirmation of the sheriff's sale of the mortgage lands to complainant mortgagee, based upon an unauthorized bid of $3,100, offered in her behalf by her solicitor's clerk, and directing a resale of the lands. Relying, apparently, upon the security of defendant's bond, she had instructed her solicitor, so the vice-chancellor found from the proofs, to bid not more than $100 for the property, but he, due to a sudden illness, was unable to attend the sale, and his clerk, through a misunderstanding of his employer's instructions, exceeded the authority so given. An unidentified bidder made a final offer of $3,000. The lands were exposed to sale subject to taxes in excess of $1,200, although defendant did not controvert proof offered by complainant

that he had in fact paid the taxes and had caused the tax lien to be assigned to one Brown in trust for himself; and it is indisputable that the price offered is substantially in excess of the fair value of the mortgaged premises. Complainant's realty expert made an appraisal of $1,750, while the value given by defendant's expert was $3,000.

In these circumstances, it was entirely proper for the chancellor, in the exercise of the power inherent in courts of equitable jurisdiction to control their own process, to relieve the mortgagee of such obligation as the sale imposed and to direct a resale of the mortgaged lands.

While a purchaser at a judicial sale is not ordinarily entitled to be relieved of his bid on the ground of mistake flowing from his own culpable negligence, and not induced by a false representation, it is the settled rule in this jurisdiction that where, by reason of fraud, accident, surprise or mistake, irregularities in the conduct of the sale, and so on, it would be inequitable and unjust to hold the purchaser to the sale, confirmation may be refused and a resale ordered. This is an ancient jurisdiction of equity that has in nowise been curtailed by section 4 of the act relating to the foreclosure of mortgages covering realty (chapter 170 of the laws of 1880), or section 94 of the Chancery act. *3 Comp. Stat. pp. 3420 et seq.; 1 Comp. Stat. p. 447.* These provisions merely restrict the affirmative exercise of the confirmatory power. *Seaman* v. *Riggins and Moir, 2 N. J. Eq. 214; Howell* v. *Hesler, 4 N. J. Eq. 266; Campbell* v. *Gardner, 11 N. J. Eq. 423; Marlatt* v. *Warwick and Smith, 18 N. J. Eq. 108, 123; affirmed, 19 N. J. Eq. 439; National Bank of the Metropolis* v. *Sprague, 21 N. J. Eq. 458; Wetzler* v. *Schaumann, 24 N. J. Eq. 60; Rea's Executor* v. *Wheeler, 27 N. J. Eq. 292; Banta* v. *Brown, 32 N. J. Eq. 41; Mutual Benefit Life Insurance Co.* v. *Gould, 34 N. J. Eq. 417; Ryan* v. *Wilson, 64 N. J. Eq. 797; New Jersey National Bank and Trust Co.* v. *Savemore Realty Co., 107 N. J. Eq. 478.*

And courts of law likewise possess inherent equitable powers to so control their executory process as to prevent injustice. *Luparelli* v. *United States Fire Insurance Co.,*

*117 N. J. Law 342; affirmed, 118 N. J. Law 565; Sakos* v. *Byers, 112 N. J. Law 256.*

For obvious reasons, public policy ordains that the power to set aside judicial sales based upon competitive bidding should be sparingly exercised. The integrity of the process, designed as it is to secure the highest and best price in cash then obtainable for the property, demands that a sale so conducted shall be vacated only when necessary to correct a plain injustice. Thus it is that in such matters the court is enjoined to exercise a sound discretion, guided by considerations of justice and equity and not by whim or caprice.

In *National Bank of the Metropolis* v. *Sprague, supra,* this court, in a deliverance by Chancellor Zabriskie, enunciated the applicable principle: "Courts of equity interfere upon a proper application, to set aside sales made by their officers, when conducted contrary to principles of law, or when, through fraud or mistake, injustice has been done by the sale. They so interfere upon application in the suit in which the sale was made, and even when the purchaser was not a party to the suit. They hold that by becoming a purchaser in the suit, he subjects himself to the jurisdiction of the court so far as the purchase is concerned. In England, and also in the court of chancery that formerly existed in New York, confirmation of sales in chancery was required. But the jurisdiction did not depend upon that; sales were set aside upon application in the suit, even after confirmation." And in *Seaman* v. *Riggins and Moir, supra,* where the second mortgagee's interest was cut off because his agent, commissioned to bid for the protection of his principal's interest, lost his way and reached the place of sale after it had been held (the sale netted sufficient to satisfy the first mortgage), Chancellor Pennington, in directing a resale, said: "The power of the court to interfere in this case is not denied. It has been frequently done in the State of New York, and in this court. No exercise of the power of the court can be plainer, than that of controlling sales by public officers on its own process. *Williamson* v. *Dale, 3 John. Ch. Rep. 290; Duncan and Others* v. *Dodd and Others, 2 Paige*

*99; Requa* v. *Rea and wife, Ibid. 339.* * * * The cases referred to on the argument from the English courts, on the subject of the opening of biddings, though not applicable to our methods of making sales, show a very strong disposition to open sales upon the single ground that more can be got for the property. They open the biddings continually, upon an offer made to bid more for the property, without any allegation of surprise or fraud. Holding a power over the subject, they do so for the interest of the estate alone. These cases do not apply to sales made with us; they have never been adopted either in the State of New York or in this state. To justify the interference of the court, there must be a foundation laid—either fraud or mistake or some accident, by which the rights of parties have been affected. In the present case, I have no doubt either as to the power of the court, or its plain duty, to interpose and set aside this sale. The bare statement of the facts show that an accident on the part of the agent in missing the road, and a mistake wholly unintentional in the complainant's solicitor in naming the house at which the sale was to take place, have occasioned the whole difficulty; and it would be a reproach on the administration of justice if no remedy could be afforded." Likewise, in *Campbell* v. *Gardner, supra,* Chancellor Williamson said that, to set aside a judicial sale, our court of equity "has always required some special ground to be laid, such as fraud or accident, which has prevented a fair sale of the property, and worked injustice to some party whose interest is affected by the sale."

The principle is not to be confined in its application to cases featured by inadequacy of price. That, standing alone, does not ordinarily justify a vacation of the sale. To justify this form of relief, it is essential that the price be so grossly inadequate as to support the inference of fraud, or to shock the judgment and conscience, or be accompanied by an independent substantive ground for equitable relief, such as fraud, accident, surprise, irregularity in the sale, and the like, making confirmation inequitable and unjust to one or more of the parties. *New Jersey National Bank and Trust*

*Co.* v. *Savemore Really Co., supra; Guarantee Trust Co.* v. *Fitzgerald Hotel and Development Corp., 97 N. J. Eq. 277; Morrisse* v. *Inglis, 46 N. J. Eq. 306; Campbell* v. *Gardner, supra; Marlatt* v. *Warwick and Smith, supra; Bethlehem Iron Co.* v. *Philadelphia and Seashore Railway Co., 49 N. J. Eq. 356; Wetzler* v. *Schaumann, supra.*

This doctrine is implicit in the cited statutes providing for confirmation of judicial sales. These statutes expressly condition the sale upon the court's "approval;" only in that case is confirmation required to be given. But the statutory approval is to be given or withheld in the exercise of a sound discretion, consonant with the requirements of equity and justice. Compare *Ryan* v. *Wilson, supra.* It was plainly not within legislative contemplation to invest the judicial authority with a discretion "unlimited" in the sense of arbitrary. See, also, *35 C. J. 46.*

Nor is there any merit in defendant's contention that the sale so made constituted a contract with complainant, and the court below was therefore without power to grant relief in the absence of such "mistake as would have justified a rescission of the contract." It is disposed of by what Mr. Justice Dixon said in *Ryan* v. *Wilson, supra:* "By force of the statute the 'sale' reported to the court is not a perfect contract made by competent parties, but is a bargain dependent upon the approval of the court to render it 'valid and effectual in law.'" See, also, *Wootton* v. *Pollock, 119 N. J. Eq. 128.* This is the general rule. *35 C. J. 43.*

We find in the circumstances here presented no abuse of discretion, either in vacating the sale or in directing a resale without a provision that the obligor's debt on the bond be credited with the price offered at the sale by the unidentified bidder.

The order is accordingly affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 13.

*For reversal*—None.