656 A.2d 66

EMPIRE OF AMERICA REALTY CREDIT CORP., PLAINTIFF, v. ROBERT J. MANCINE, ET AL., DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Camden County

Decided November 4, 1994.

*Daniel A. Rosenberg* for defendant-movant American General Finance, Inc. (*Rosenberg & Rosenberg* attorneys).

*Frank J. Martone* for plaintiff (*Frank J. Martone, P.C.* attorneys).

*Thomas J. Shusted, Jr.* for defendants Gigliotti.

## OPINION

DAVIS, P.J.Ch.

American General Finance, Inc. (American), the movant and defendant-second mortgagee, requests this court to vacate the sheriff's sale and thereby prevent the delivery of a sheriff's deed to the successful bidder because the sale was held at a time not permitted by statute. This motion raises a question not previously addressed in any reported decision of any court. That question is whether the sheriff of any county has the authority to conduct a sale prior to 12:00 noon, which time has been legislatively set as the earliest time that sheriff sales are to be conducted. It is the opinion of this court that a sheriff does not have the authority to change that which the legislature has mandated. All sheriff sales must be conducted between the hours of 12:00 noon and 5:00 p.m. *N.J.S.A.* 2A:61–4.

## *FACTS*

Empire of America Realty Credit Corp., (Empire), as the foreclosing first mortgagee, proceeded with its writ of execution, publication and request of the sheriff to sell the property in question.

Empire, through its attorney, sent to American a copy of the proposed newspaper notice, presumably after obtaining the date and hour for the sale from the sheriff. This notice stated that the sale was to be held at 2:00 p.m. on a date not now important because the sale was adjourned. As a result of receiving this notice from the first mortgagee, American had the property appraised and proceeded to make the necessary arrangements to bid at the sale to protect its interest. The appraisal obtained was in the amount of $97,500. The first mortgagee's upset price was $52,771.83. American averred that it was prepared to bid to $85,000.

Shortly before the first published sale date, American called Empire to ascertain whether there had been an adjournment. Empire advised American that the sale had been adjourned to October 21, 1994. No mention was made as to the time. Shortly before the adjourned sale date American called the sheriff's office to ascertain whether the sale had again been adjourned. America was advised that the sale would go forward.

On the adjourned date, American proceeded from Springfield, New Jersey to Camden, New Jersey, a distance which would take approximately two hours. American arrived shortly before 2:00 p.m., the time Empire had first advised as the time for the sale. After American made its presence known to the sheriff, the sheriff advised American that the sale was conducted at 11:00 a.m., the time set forth in the newspaper publication. American showed the sheriff the copy of the proposed publication sent to it by the first mortgagee which clearly showed 2:00 p.m. as the scheduled time. The sheriff located his file which disclosed a different publication with the time set as 11:00 a.m. This notice had been published once each week for four successive weeks. The sheriff opined that the first mortgagee sent American a draft which was subsequently changed. American made known its objection and filed this motion. It should be noted that American never made any further inquiry concerning the time for the sale after receiving the first notice. It should also be noted that neither Empire or the sheriff

advised American of the time for the sale when inquiry was made regarding adjournments.

The successful bidders at the sale, Ross M. and Rose M. Gigliotti, having bid $56,000, contend that even if it is found that the sheriff violated the statute, this court should not declare the sale as void as against them because they are bona fide purchasers for value and the equities as between them and American preponderate in their favor. Empire took no position, the amount obtained at the sale being sufficient to satisfy the debt.

## ANALYSIS

█ The statutory requirement of conducting sheriff sales between the hours of 12:00 noon and 5:00 p.m. has been in existence for well over a century. *See Brown v. Farley, et al.,* 4 A.79, 81 (N.J.Ch.1886) wherein the Vice Chancellor stated that "the sheriff had the same right to sell at the hour of half past 12 as at any other between 12 and 5, *the statutory limits.*" Today's statute *N.J.S.A.* 2A:61–4, reads, in relevant part, as follows:

Any officer or person mentioned in Section 2A:61–1 of this title, making a sale of real estate governed by this chapter, shall, at the time and place appointed therefor, *between the hours of 12 and 5 in the afternoon* ... sell such real estate at public venue to the highest bidder.

The requirement regarding the hours for sheriff sales has been the law since 1877. Although the statute has been amended in the years 1887, 1898, 1912, 1930 and 1933, at no time did the Legislature change the hours for conducting sales. Therefore, it must be concluded that this requirement is well embedded in our law and should only be modified by the legislature.

The requirement of sheriffs to conduct sales between the statutorily prescribed time periods leaves no discernible discretion in them. As such, the requirement is compulsory, although ministerial in nature, and the sheriffs act solely by virtue of the statutory authority conferred. *See Raniere v. I & M Invs., Inc.,* 159 *N.J.Super.* 329, 336, 387 *A.*2d 1254 (Ch.Div.1978), *aff'd,* 172 *N.J.Super.* 206, 411 *A.*2d 719 (App.Div.), *certif. denied,* 84 *N.J.*

473, 420 A.2d 1298 (1980). It is the opinion of this court that the departure from this legislative command is material and, as such, renders the sale void, not merely voidable. If that which precedes the actual sale is illegal, such as scheduling it outside of the legislatively permissible time period, the resultant sale must be declared a nullity. A parallel rationale may be found in the law regarding executions. 5A *Thompson on Real Property*, § 2751 (1959 and Supp.1977) and 30 *Am.Jur.2d* Executions, § 32 (1967 and Supp.1977). *See also* §§ 310, 434 (1967 and Supp.1977) where it has been stated that this result subsists even in the face of a good faith purchaser.

As previously stated, the successful bidders at the sale contended that notwithstanding the dereliction of the sheriff, their position as good faith purchasers should render the sale voidable, not void *per se* and that the existing equities favor them, when compared with any relating to American, which did not attend the sale at the time duly published in the newspaper on four occasions.

▮ The rule is now well settled that the subsequent legal title to land, in order to prevail over a prior equitable title, must not only have been acquired in good faith and without notice of the prior equity, but must also be founded upon an original or presently moving consideration of value. *Bajek v. Polack*, 120 *N.J.Eq.*, 104, 108, 184 *A.* 212 (Ch.1936), (citing *Mingus v. Condit*, 23 *N.J.Eq.* 313 (Ch.1873)).

With regard to the latter element, it is undisputed that the bidders obligated themselves to pay to the sheriff of Camden County the sum of $56,000, which represents their bid and the resulting valuable consideration for the property. There is also no question that the bidders submitted their bid in good faith; that is, they intended to purchase the property. The legal question becomes whether the failure of the sheriff to comply with the law, fairly places upon the bidder, notice of a possible prior equity; that is, notice that the sale may be void and therefore, all prior equities are preserved.

Where a statutory scheme, such as that which relates to sheriff sales, has been in existence for over 100 years, it seems that a conclusion which imputes knowledge of that scheme to all bidders is not arbitrary, unreasonable or insensitive. It is the opinion of the court that the application of the adage "Ignorance of the law is no excuse" is quite appropriate in these circumstances. *Shaffer v. Federal Trust Co.,* 132 *N.J.Eq.* 235, 288, 28 *A.2d* 75 (Ch.1942). All parties are deemed to know the law, especially in cases where legal counsel is involved or where astute business people normally congregate, deliberate and reign with regard to the risks inherent in their activity, such as bidding at sheriff sales. Another equally compelling element of this analysis is the fact that all persons have a right to rely upon a legislative mandate until it is changed. This right of reliance should not be cast aside and declared unreasonable merely by the conduct of a sheriff bereft of any power to legislate.

Even though one may conclude that American should also have asked about the time for the sale when it on two occasions asked whether the sale was adjourned, this fact should not on balance be used to create a greater equity in the successful bidder. This is the case because Empire and the sheriff, when asked about the adjournment, could have just as easily iterated the time of the sale as finally published. Then, perhaps American would have attended, bid in a fashion that it now avers, notwithstanding that the sale was being conducted at an impermissible hour. If American were the successful bidder under those circumstances, it more likely than not would not have raised the objections. After the expiration of that period of time for objecting to sales had elapsed in accordance with *R.*4:65–5, the sale would be free from attack. Just because a litigant may not object to a proceeding if he or she were successful does not defeat such person's right to object if it in fact is not successful. Based upon the facts presently existing, the equities are in equipoise as between American and the successful bidders.

Most assuredly, sheriff sales should be procedurally correct, as just discussed; however, the purpose for which such sales are conducted must not be disregarded when their validity is challenged. "The purpose of [a] sale is to obtain the highest price for the benefit of the foreclosing mortgagee, other junior lien holders, and, perhaps, the owner-mortgagors." *Investors & Lenders v. Finnegan*, 249 *N.J.Super.* 586, 592, 592 *A.2d* 1244 (Ch.Div.1991) (citing *Froehlich v. Walden*, 66 *N.J.Super.* 390, 169 *A.2d* 204 (Ch.Div.1961)).

It is very clear from the facts before the court that the best price was not obtained. Although the successful bidder bid an amount sufficient to satisfy the first mortgagee, that sum was grossly disproportionate to the value of the property and to the amount that the second mortgagee (American) was willing to pay to protect its interest.

American's interest in the realty will be cut off if this court does not act and correct the error of the sheriff. Although the court's authority and discretion is not unlimited, *Ryan v. Wilson*, 64 *N.J.Eq.* 797, 52 *A.* 993 (E. & A.1902); and *see also*, 35 *C.J.* 46, it certainly has the duty to exercise a sound discretion, consonant with the requirements of equity and justice. *Karel v. Davis*, 122 *N.J.Eq.* 526, 531, 194 *A.* 545 (E. & A.1937).

To confirm this sale, by denying American's motion, would be to give the successful bidder an apparent $41,000 windfall because of the improper conduct of the sheriff. Additionally, although not represented at the hearing, the owner-mortgagor's interest has most assuredly been worsened.

## CONCLUSION

Because of the irregularity of the sale, as to the time it was conducted, the gross inadequacy of the price obtained, the cut off of the second-mortgagee's interest because of the irregularity and the possible worsening of the owner-mortgagor's interest, it is the opinion of this court that it would be a "reproach on the adminis-

tration of justice if no remedy could be afforded...." *Karel v. Davis, supra,* 122 *N.J.Eq.* at 530, 194 *A.* 545.

The sale is set aside and the Sheriff of Camden County shall bear the cost of re-advertising the sale.