# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Wilmington Savings Fund Society, F.S.B., | ) | N22L-05-068 FJJ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Zachary Pearce and Robin Pearce, | ) | |
| | ) | |
| Defendants, | ) | |

Submitted: January 9, 2026
Decided: January 28, 2026

## OPINION AND ORDER
*on Zachary Pearce's Motion to Set Aside a Sheriff's Sale and
WSFS's Motion to Confirm Sheriff's Sale*

*Jeffrey S. Cianciulli, Esquire,* Weir, LLP, Wilmington, Delaware, *Attorney for Plaintiff.*

*Mr. Zachary Pierce and Mrs. Robin Pearce*, Townsend, Delaware, *Pro-Se Defendants.*

*William Larson, Esquire*, Wilmington, Delaware, *Attorney for Party-In-Interest, Quality Angels Real Estate, LLC.*

**Jones, J.**

As part of a series of commercial loans made to Spring Oaks Development LLC ("Spring Oaks"), a Delaware limited liability company, controlled by Zachary Pearce ("Pearce") and his then business partner, Aravindin Pratapagiri ("Pratapagiri"), WSFS extended commercial credit to the Zachery Pearce and his wife, Robin Pearce, as joint borrowers in the amount of $312,500.00 (the "Pearce Loan") on March 29, 2016.  The Pearce Loan was secured by a Mortgage on the Pearces' personal residence located at 161 Masseys Church Road, Townsend, DE. Subsequently, the following occurred:

i)  The parties entered into a Forbearance Agreement on June 10, 2019 (the "FBA"), which provided the Pearces with additional time to repay the Pearce Loan until September 30, 2019, and if payments were current, then until December 13, 2019;

ii)  on November 15, 2019, by First Amendment to Forbearance Agreement ("First Amendment"), agreed further to extend the time for which all obligations were due and owing under the Pearce Loan until April 30, 2020;

iii)  on April 27, 2020, the Pearces and Spring Oaks entered into a Second Amendment to Forbearance Agreement (the "Second Amendment") which, among other things, provided the Pearces with an extension until July 30, 2020 to repay the Pearce Loan; the Second Amendment also provided that the Pearces were responsible for the payment of a $1,000 forbearance fee;

iv)  on January 21, 2021, the Pearces and Spring Oaks entered into a Third Amendment to Forbearance Agreement (the "Third Amendment") which, among other things, provided the Pearces with an extension until December 31, 2021 to repay the Pearce Loan; and

v)  finally, on October 7, 2022, entered into a Fourth Amendment to Forbearance Agreement (the "Fourth Amendment") which, among other things, provided the Pearces with a final (post-foreclosure) extension until September 30, 2023 to repay the Pearce Loan.

The Bank did not receive payment by December 31, 2021, and on May 25, 2022, WSFS filed the instant mortgage foreclosure action. Following the final mandatory mediation of the Foreclosure Action, the parties executed the Fourth Amendment which reaffirmed the debt obligations owed by the Pearces to WSFS and established a new maturity date of the Pearce Loan as September 23, 2023. The Fourth Amendment also required the Pearces to deliver to Lender a Foreclosure Consent Judgment to be held in escrow by WSFS pending an "Event of Default." The Pearces defaulted under the Fourth Amendment by failing to make the final payment by September 23, 2023, and on October 27, 2023, WSFS filed its Motion for Entry of Consent Judgment. On December 12, 2023, this Court entered judgment in mortgage foreclosure (the "Judgment") in favor of WSFS. No appeal was taken of the Judgment.

On March 21, 2024, the Sheriff of New Castle County was directed to sell the Pearce Property to satisfy the debt owed to WSFS. The sale was scheduled for March 12, 2024, and then moved to June 11, 2024, at WSFS's request. On June 10, 2024, Pearce moved under Superior Court Civil Rule 60(b) to be relieved from the Judgment.

In his motion to be relieved from judgment, Pearce argued that the fraud of his former business associates and his attorney, where Pearce's electronic signature was forged by them, caused defaults on multiple business loans. The

3

motion for relief was heard by Commissioner Salomone who denied the Motion on the record on August 9, 2024. Commissioner Salomone ruled that the Superior Court Civil Rule 60(b) did not provide relief to Pearce where the complaint upon fraud was not the fraud of WSFS. No party requested that Commissioner Salomone's decision be confirmed by a Superior Court Judge and no order was ever entered by a Superior Court Judge. Pearce appealed the decision to the Delaware Supreme Court. The Delaware Supreme Court dismissed the appeal on September 12, 2024, because it had no jurisdiction to consider an appeal from a Commissioner's Order.[1]

WSFS continued with its efforts to complete a Sheriff's sale on the property. The sale was scheduled for November 12, 2024. However, that was stayed on that same date by a bankruptcy filing by Pearce.

Pearce filed three personal bankruptcy cases in the United States Bankruptcy Court for the District of Delaware. Each of these cases was dismissed by the Bankruptcy Court on November 24, 2024, February 28, 2025, and September 30, 2025, respectively. The last dismissal came after WSFS filed a Motion with the Bankruptcy Court pursuant to 11 U.S.C. 362(c)(4)(A)(ii) on September 18, 2025. This section of the bankruptcy code allows a creditor, such

---

[1] While not necessary to the instant decision, out of an abundance, the Court expressly adopts and affirms the decision of Commissioner Salomone for the same reasons articulated by her on the record.

4

as WSFS, to obtain a determination from the Bankruptcy Court as to whether the automatic stay under the bankruptcy code is or is not in place. WSFS sought this relief. On September 30, 2025, the Bankruptcy Court entered an order providing in part that "the automatic stay under 11 U.S.C. 362 is not in effect" and that WSFS "may proceed with exercising its rights and remedies against the Debtor and the Debtor's property, including by foreclosure on the Debtor's residential real property."[2] The Bankruptcy Court denied Pearce's request for reconsideration. On December 8, 2025, the Bankruptcy Court entered an Order that provided the following:

1. Mr. Pearce has filed three personal cases in this Court. All of those cases have been dismissed by the Court. The last dismissal order entered by the Court provided that the case was dismissed with prejudice, with one-year bar to refiling. Following a hearing, the Court denied Mr. Pearce's request for reconsideration of that dismissal by Order dated November 25, 2025.
2. The record further reflects that Mr. Pearce is a principal of Gray's Landing Development, LLC ("Gray's Landing"). Gray's Landing is alleged to own, or have an ownership stake in, the Property. Gray's Landing was the subject of a *pro se* Chapter 11 petition signed by Mr. Pearce in 2023 in this Court, which was dismissed on December 18, 2023.
3. Gray's Landing filed another Chapter 11 petition (also signed by Mr. Pearce, and again, without counsel representing the corporate debtor) on November 5, 2025. The next day on November 6, 2025, a separate Chapter 7 petition for Gray's Landing was filed by Mr. Pearce, once again without counsel for the corporate debtor. Following a hearing held on November 12, 2025, both the recent Chapter 11 case and the Chapter 7 case were dismissed by the Court by Order dated November 13, 2025.

---

[2] Docket Item ("D.I.") 42 in the Bankruptcy Court's case docket, Case No. 25-11389 (BLS).

4. On November 17, 2025, Catherine Fry Pearce ("Mrs. Pearce") filed a *pro se* Chapter 13 petition in this court. The record reflects that Mrs. Pearce is Mr. Pearce's mother, and she currently resides in the Property and asserts a lien or mortgage against the Property.

5. Based upon the foregoing, the Court finds that Mr. Pearce has orchestrated these many bankruptcy filings in this Court as part of a scheme to hinder and delay his creditors. Congress has built specific provisions into the Bankruptcy Code to address circumstances where debtors pursue serial filings in an abuse of the bankruptcy system and to the unfair detriment of their creditors. …

6. None of the multiple filings made by Mr. Pearce demonstrate a meaningful intention to utilize the rehabilitative tools of the Bankruptcy Code, beyond obtaining a brief reprieve from his creditors. Mr. Pearce has filed to perform his duties as a debtor in possession in any of these cases or to make any of the basic filings, such as schedules of assets and liabilities to facilitate the administrative of his cases. The Court further notes that the same maladies afflict the Gray's Landing cases, in addition to having been impermissibly filed without counsel for the corporate debtor.[3]

WSFS issued a Writ on August 19, 2025, to restart the Sheriff's sale process.[4] The property was posted on September 23, 2025.[5] An affidavit of Service of Notice to Lienholders, Tenants, Record Owners and Persons having Interest of Sheriff Sale of Real Estate scheduled on October 14, 2025, was filed on October 9, 2025.[6] The affidavit of service indicates that William Pearce was served at 161-A Massey Church Road, Townsend, DE 19734.[7] On October 13,

---

[3] D.I. 56 in the Bankruptcy Court's case docket, Case No. 25-11389 (BLS) (internal footnotes omitted).
[4] D.I. 44.
[5] D.I. 46.
[6] D.I. 47.
[7] D.I. 47, Exhibit BB.

2025, Pearce filed an Emergency Petition to Stay the Sheriff's sale which was not addressed before the sale occurred on October 14, 2025.[8]  The successful bidder was Quality Angels Real Estate, LLC ("Quality Angels") who bid $971,000.

Pearce is seeking to set aside the Sheriff's sale for five reasons:

1. Failure under Superior Court Civil Rule 69(g) to give proper notice to a recorded Lienholder – William P. Pearce, who is Zachery Pearce's father;[9]
2. There was a contract for sale of the property at $2.1 million dollars, and the contract was with an entity that is related to the entity that purchased the property at the Sheriff's sale for $971,000;
3. WSFS was engaged in fraudulent conduct with the successful bidder on the property that allowed the property to sell for $971,000 when there was a contract with a related entity for $2.1 million.  Pearce specifically alleges that WSFS, through counsel, misrepresented to the Bankruptcy Court there was no viable contract of sale on the property;
4. The automatic stay of the Bankruptcy Court prevented the sale; and
5. 131 Massey Landing Road is the home of Catherine Pearce, plaintiff's mother, and moving her from the property will put her at risk.

## STANDARD OF REVIEW

This Court has broad discretion to confirm or set aside Sheriff's sales.[10] Review of a Sheriff's sale "implicates the court's inherent equitable power to control the execution process and functions to protect the affected parties from

---

[8] D.I. 48.

[9] Originally, Mr. Pearce complained that service was defective because, in addition to his father, William C. Pearce (his brother), Cathy Pearce (his mother) and JTPCC Development LLC (an entity where Zachary Pearce is the sole member) did not get notice.  At the hearing in this case on January 9, 2026, Mr. Pearce abandoned his claim based on lack of notice as to his brother, mother and JTPCC Development LLC.

[10] *Burge v. Fidelity Bond and Mortgage Co.*, 648 A.2d 414, 420 (Del. 1994).

injury or injustice."[11] To that end, when reviewing a Sheriff's sale, the Court "must ascertain whether there was 'some defect or irregularity in the process or mode of conducting the sale, or [ ] neglect of duty, or misconduct on the part of the Sheriff *or some other sufficient matter* … whereby the rights of parties to, or interested in the sale are, or may have been, prejudiced.'"[12] It is well-established in Delaware that "mere inadequacy of price, standing alone, is an insufficient ground for setting aside a judicial sale."[13] Additionally, the Court "may not arbitrarily or capriciously refuse to confirm a sale, where there are no irregularities in the sale proceedings and no fraud, unfairness, or other extraneous matter demonstrating unfairness to one of the interested parties is shown."[14] Therefore, "a properly conducted sale should be set aside only when necessary to correct a plain injustice, consistent with the principles of equity."[15]

## NOTICE ISSUE

Pearce first complains that the Sheriff's sale should be set aside because his father, Willaim Powell Pearce, was not on the certificate of service filed by WSFS as to the lienholders and other interested parties. In October 2024, the Pearces caused certain mortgages to be filed in favor of family members. A mortgage was

---

[11] *Id.* at 420 (citing *Petition of Adair*, 190 A. 105, 107 (Del. Super. Ct. 1936)).
[12] *Id.* at 419 (quoting *Petition of Adair*, 190 A. 105, 107 (Del. Super. 1936)).
[13] *Id.* (citing 2 Victor B. Woolley, *Practice in Civil Actions in Delaware*, §1121 (1906)).
[14] *Id.* at 420.
[15] *Id*. at 421 (citing *Karel v. Davis*, 194 A. 545, 546 (N.J. 1937).

given to William Pearce in the amount of $104,000, and another mortgage was given to William Christopher Pearce in the amount of $70,000. Both mortgage agreements were filed and recorded in the same document. That document provided the following:

**MORTGAGE AGREEMENT**

**THIS MORTGAGE AGREEMENT** is made on October 21, 2024, between Zachary Pearce and Robin Pearce (collectively, the "Mortgagors"), with an address of 161 Massey's Church Rd, Townsend, DE 19734, and William Pearce (the "Mortgagee").

For valuable consideration, the receipt and sufficiency of which is acknowledged, the Mortgagors hereby grant and convey to the Mortgagee a mortgage in the sum of **100 Hundred Thousand Dollars ($104,000)** on the following described real property:

Property Description: The property known as 161 Massey's Church Rd, Townsend, DE 19734, New Castle County, State of Delaware, identified as **Parcel ID Number: 15-010.00-154.**

Said Mortgage on October 21, 2024, made by **ZACHARY PEARCE AND ROBIN PEARCE** to **WILLIAM PEARCE, ITS SUCCESSORS AND ASSIGNS** for real debt of $104,000, and recorded in the office of the Recorder of Deeds in New Castle County, State of Delaware.

IN WITNESS WHEREOF, the Mortgagors have executed this Mortgage on October 21, 2024.

Mortgagors:

_____
Zachary Pearce

_____
Robin Pearce

Mortgagee:

_____
William Pearce

ZACHARY PEARCE AND ROBIN PEARCE ONLY
*SWORN TO AND SUBSCRIBED BEFORE ME THIS* 6 *DAY OF* NOVEMBER 2024

_____
**NOTARY**

THOMAS A. LUSHBAUGH
NOTARY PUBLIC
STATE OF DELAWARE
MY COMMISSION EXPIRES
NOVEMBER 15, 2025

HAYDEE G WILSON
MY COMMISSION
EXPIRES
MAY 23, 2025
NOTARY PUBLIC
STATE OF DELAWARE

9



MORTGAGE AGREEMENT**

THIS MORTGAGE AGREEMENT is made on November 5, 2024, between Zachary J. Pearce (the "Mortgagor"), with an address of 161 Massey Church Rd., Townsend, DE 19734, and William Christopher Pearce (the "Mortgagee"), with an address of 161 A Massey Church Rd., Townsend, DE 19734.

For valuable consideration, the receipt and sufficiency of which is acknowledged, the Mortgagor hereby grants and conveys to the Mortgagee a mortgage in the sum of Seventy Thousand Dollars ($70,000.00) on the following described real property:

**Property Description:** The property known as 161 A Massey Church Rd., Townsend, DE 19734, New Castle County, State of Delaware, identified as Parcel ID Number: 15-010.00-154.

This Mortgage is contingent upon the property either selling at a minimum price of Two Million Four Hundred Thousand Dollars ($2,400,000) or refinancing at One Million Eight Hundred Thousand Dollars ($1,800,000) within the next twelve (12) months.

Said Mortgage, made by Zachary J. Pearce to William Christopher Pearce, its successors and assigns for the real debt of $70,000.00 and recorded in the office of the Recorder of Deeds in New Castle County, Delaware.

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage.

**Mortgagor:** Zachary J. Pearce

**Mortgagee:** William Christopher Pearce

SWORN TO AND SUBSCRIBED BEFORE ME THIS 7 DAY OF November. 2024

**Notary Public:**

11/07/2024

Utpal K Turakhia
State of Delaware
Notary Public
No. 20240514000019
My Commission Expires 6/8/2028

It is not at all clear that the two separate mortgages applied to two different people. The first agreement for $104,000 references William Pearce, and the second agreement for $70,000 references William Christopher Pearce. What is clear is

that the only address listed in either agreement for William Pearce or William Christopher Pearce is 161 A Massey Church Road, Townsend, DE.

There is no dispute that the Certificate of Service to Lienholders and other interested parties as required by the Sheriff's sales listed only a William Pearce at 161 A Massey Church Road, Townsend, DE. The Certificate of Service reflects that someone signed the postal service green card on September 27, 2025, for William Pearce at 161 A Massey Church Road, Townsend, DE. The question is whether this constitutes proper service on William P. Pearce requiring the sale to be voided. Under the facts of this case, it does.

Superior Court Rule 69(g) provides for Notice of Sheriff's Sales of Real Estate. The Rule states that "[t]he notice shall be addressed to holders of liens at the address which appears upon the recorded or filed instrument creating the lien or upon the record of the lien." The only address on either of the mortgages to William Pearce or Willaim Christopher Pearce is 161 Massey Church Road, Townsend, DE. This is the address where the notice was sent.[16] WSFS complied with the requirements of Rule 69 in serving either Mr. Pearce's father or brother.

In addition, the property was posted by the Sheriff. Finally, and perhaps more critically, Mr. Pearce testified that both his brother and father were made

---

[16] WSFS has supplied the Court with the postal service return receipt.

aware, by Mr. Pearce himself, of the filing of the writ and of the scheduling of the Sheriff's sale before the actual sale.

To pass constitutional muster "notice must … be reasonably calculated to apprize interested parties of the pendency of the action."[17] Due process does not always require actual notice. The authority attempting to serve notice must address the "practicalities and peculiarities of the case" and act reasonably.[18] "When considering whether the authority attempting to serve notice has acted reasonably, the court should balance 'the interest of the … authority[] and the individual … sought to be protected.'"[19]

When the competing interests are balanced, the Court concludes that notice was proper. Rule 69(g) provides that service should be provided to the address indicated on the mortgage documents. The mortgage documents in this case were prepared by Zachery Pearce and they do not clearly reflect that two different William Pearce's had a mortgage interest. The only address listed on the document was the Massey Lane address, which is where the certified mail was sent. Additionally, the property was posted by the Sheriff. Most importantly, Zachary

---

[17] *Shipley v. First Fed. Sav. & Loan Ass'n of Delaware*, 619 F. Supp. 421, 437 (D. Del. 1985) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 311 (1950)).

[18] *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950).

[19] *New Castle Cnty. v. Gallen*, 2003 WL 21739069, at *4 (Del. Super. Ct. May 27, 2003), *aff'd*, 839 A.2d 665 (Del. 2003) (citing *Holland v. King*, 500 N.E.2d 1229, 1235 (Ind. Ct. App. 1986)); *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950).

Pearce made it clear at the hearing that both his father and brother were aware of the scheduled Sheriff's sale before the sale occurred.

Added to these facts is that there has been no evidence offered that William P. Pearce suffered real prejudice as a result of any alleged deficiency in the notice process. There is simply no evidence that William P. Pearce would have been "ready, willing, and able"[20] to out-bid WSFS if he had received timely notice by certified mail. Absent such evidence, the sale should not be set aside for notice reasons.[21] On these facts notice was proper.[22]

Neither William Pearce appeared at the hearing. In this analysis, the Court has addressed the merits of the notice argument. Even had there been improper notice, Zachery Pearce has no standing to raise objections that are personal to both his brother and father. As such, the notice arguments are denied on that basis as well.[23]

The Court held a hearing in this case on December 9, 2025. At the time of that hearing, the Court scheduled an evidentiary hearing for January 9, 2026, on

---

[20] *Wilmington Sav. Fund Soc., FSB v. Saint Annes Club, LLC*, 2010 WL 663948, at *4 (Del. Super. Ct. Jan. 29, 2010).

[21] *Id.*

[22] William Pearce submitted an affidavit in this case maintaining that notice was not given to him.

[23] *MidFirst Bank v. Mullane*, 2022 WL 4460810, at *1, n. 1 (Del. Super. Ct. Sept. 26, 2022) ("it is well established by Delaware law that a party does not have standing to challenge a sale on behalf of other interested persons who are not part of the suit."); *see also Dumler v. Mabe*, 1979 WL 193424, at *2 (Del. Super. Ct. July 5, 1979) ("[t]he second issue is whether the purchasers may assert the creditors' right to notice as grounds for voiding the sale. The authority is overwhelming that constitutional rights are personal and may not be asserted vicariously."); *see also Mills v. Trans Caribbean Airways, Inc.*, 272 A.2d 702, 703 (Del. 1970) ("[t]he general rule is that one person may not assert the constitutional rights of another."); *see also In Re: Team Sys. Int'l*, 2022 WL 4371097, at *5 (Bankr. D.Del. Sept. 21, 2022).

13

the motion to set aside the Sheriff's sale. At the December 9, 2025 hearing, the Court advised Mr. Pearce that any evidence he wanted to present in support of this motion needed to be presented at the January 9, 2025. Prior to and at the January 9, 2026 hearing, Pearce presented documents in support of his motion. During the January 9, 2026 hearing, he testified and made arguments in support of his motion. At that hearing, Pearce referenced statements made by counsel for WSFS during certain bankruptcy hearings which he claimed were made in bad faith by WSFS. Pearce claimed this bad faith supported his position to set aside the Sheriff's sale.

This claim had been raised to the Court by Pearce on a number of occasions prior to January 9, 2026. When the Court questioned Pearce about the existence of the relevant bankruptcy proceeding transcripts, he first maintained that the transcripts had been ordered and then admitted that they had not. On January 12, 2026, Pearce filed a motion to supplement the record to allow him to submit additional material which included the prior referenced transcripts and other arguments about communications he had post-January 9, 2025, with his family members. According to Pearce, his family members indicated that their signatures were not on the postal receipts and that they never received notice.

The Court made it plain to Mr. Pearce in December 2025, that the January 9, 2026, hearing was the time for Pearce to present the evidence in support of his

motion. Pearce's attempt to supplement the record post-January 9, 2026, is improper and his request is **DENIED**.

Even if the Court were to consider the post-January 9, 2026 submissions, the submissions do not alter the Court's conclusion on the notice issue. First, the post-January 9, 2026 affidavits are not signed. Second, the Court's review of WSFS's Affidavit of Service of Notice to Lienholders, Tenants, Record Owners and Persons Having an Interest in Sheriff's Sale of Real Estate leads me to conclude that each of the items were signed for by the same person. Pearce acknowledged that he received service. To the extent Pearce is arguing that notice was not sent to the addresses indicated and not signed for by someone at the address, those arguments are simply not credible. Given the undisputed testimony that Pearce's family members were aware of the Sheriff's sale prior to its occurrence, if someone else signed for one the family members, which appears to have occurred, that does not make the notice deficient under the terms of Rule 69(g) or the constitution.

## INADEQUACY OF PRICE

The record is undisputed at in February 2025 there was a contract of sale between the Pearces and Michaeline James for $2.1 million. Quality Angels was the successful bidder at the Sheriff's sale and the price paid by Quality Angels at the Sheriff's sale was $971,000. Ms. James is the principle of Quality Angels. Mr.

15

Pearce maintains that this demonstrates an inadequate price for the property requiring this Court to set aside a sale.

The general Delaware rule of law is that a price which is less than half of the fair market value of the property will be considered per se "grossly inadequate, shocking the conscious of the Court."[24] It is the fair market value of the property at the time of the Sheriff's sale that controls the analysis.[25] The burden to prove an inadequate price lies with Pearce.

It is undisputed that as of February 2025, there was a contract on the property for $2.1 million. That is the best evidence of the value of the property as of that time period. The question is whether that was the value of the property at the time of the Sheriff's sale. Two witnesses were called by WSFS at the hearing to address the value question. The first witness was Charles "Pat" Patterson. Patterson is a real estate agent and broker licensed in Pennsylvania and New Jersey. He was worked extensively with Ms. James. He was the referring Real Estate agent for the property in question and was involved in the contract negotiations in early 2025. Patterson confirmed the sales price in the February 2025 contract which was contingent on settlement within 17 days and that the

[24] *E.g., Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994) (internal quotations omitted); *see also JP Morgan Chase Bank, Nat'l Ass'n v. Shea*, 2019 WL 4071855, at *2 (Del. Super. Ct. Aug. 28, 2019) (citing *Home Beneficial Life Ins. Co. v. Blue Rock Shopping Ctr., Inc.*, 379 A.2d 1147 (Del. Super. Ct. 1977)).
[25] *Felton Bank v. Wicks*, 1998 WL 283377, at *1 (Del. Super. Ct. Feb. 3, 1998) (citing *Cent. Nat. Bank of Wilmington v. Indus. Tr. Co.*, 51 A.2d 854, 858 (Del. Super. Ct. 1947)).

buyers would obtain a clear title. He testified that there were numerous extensions to the sales contract, the last of which expired on October 15, 2025.

Patterson stated that there were serious lien issues with the property effecting title. He was also concerned that as time dragged on, the condition of the property was not the same as it was in February 2025. Patterson testified that the title company attorneys advised that to proceed to settlement in the normal course would require the parties to come up with $3.7 million dollars to satisfy all judgments and liens of record. This meant that Mr. Pearce would have to come up with $1.6 million himself beyond the $2.1 million contract price. Patterson opined that the value of the property was greatly reduced by the time of the Sheriff's sale from the time of the contract in February 2025. According to Patterson, the property was greatly reduced from the contract price because (1) the seller could not deliver clear title; (2) he was uncertain of the condition of the property in October 2025; (3) the fact that the property had to go through the Sheriff's sale process in and of itself caused the property value to decrease; and (4) the owner was still occupying the property. He suggested that at most the property was worth $1.2 million at the time of the Sheriff's sale. Patterson also attended the Sheriff's sale at issue in this case.

James is the principle of Quality Angels. Ms. James testified at the January 9, 2026 hearing. She was obviously involved in the sales contract process in

17

February 2025, and she attended the Sheriff's sale at issue. With respect to the sales contract of $2.1 million, it called for a quick sale and a clear title. A clear title could not be produced which caused the matter to drag out. By the time of the Sheriff's sale, she was not willing to go through with the original contract nor agree to any type of modifications to the contract, because the only way she could be assured of getting a clear title would be to acquire the property at the Sheriff's sale instead of going through with a traditional sale. James testified, as did Patterson, that there were no communications of any kind between them and WSFS about their bidding strategy. WSFS was in no way involved in the actions of Quality Angels regarding how they bid on the property at the Sheriff's sale.

Both James and Patterson testified that there were a number of bidders at the Sheriff's sale, but at the end it was just Quality Angel and WSFS bidding. The bidding stopped when the price got to $1,000 over the amount of the payout to the first lien holder (U.S. Bank) and WSFS.

Pearce presented his own view as to the value of the property. His testimony was that the property at the time of the Sheriff's sale was at least the contract price of $2.1 million, and probably closer to $2.5 million. In support of his view, Pearce submitted a document both pre- the January 9, 2026 hearing, and post-January 9, 2026 hearing as support for his view. The documents presented take the form used by an appraiser. While an owner is permitted to testify as to the value of his

18

property, he may not use the method relied upon by an appraiser when he is not an appraiser.[26]  For purposes of this motion, I accept that it is Pearce's view that the property was worth at least $2.1 million at the time of the Sheriff's sale given the contract that existed in February 2025.

Given Patterson's testimony and Pearce's testimony, I must resolve the conflict between them.  I find Patterson's testimony to be more credible.  To suggest that the property has not decreased in value given the events post-February 2025, and their effect on value as described by both James and Patterson is simply not credible.  I accept Patterson's view of value over that of Pearce.  As such, the value of the property at the time of the Sheriff's sale ($1.2 million) versus the sale price of $997,000 does not require that the sale be set aside. In short, Pearce has not carried his burden of establishing that the price at the Sheriff's sale was inadequate.

## REMAINING ALLEGATIONS

Pearce asserts three additional arguments in support of his claim to set aside the Sheriff's sale. First, he complains of collusion between WSFS and Quality Angels in the bidding process.  There are simply no facts to support this claim.

---

[26] *State v. Lesko,* 2015 WL 7776636, at *5 (Del. Super. Ct. Nov. 18, 2015) (discussing the Record Owner Rule and the limitations of a non-expert witness).

Second, Pearce claims that WSFS acted in bad faith. Pearce's attempt to supplement the record, with as still unproduced transcripts of bankruptcy proceedings, comes too late. In fact, the record demonstrates that WSFS attempted to work with Pearce for years to get the debt paid. When that did not occur, WSFS followed the appropriate procedures which included the unusual step of seeking affirmative relief from the bankruptcy court to get a ruling on whether the automatics stay was in place. WSFS bid exactly up to the point to protect its interest and no further. Finally, once Pearce defaulted on the loan, WSFS was within its rights to force a Sheriff's sale absent Pearce paying what WSFS was owed. Pearce's allegation that WSFS somehow misled the Bankruptcy Court is that, an allegation. He was required to offer such proof. Pearce made no timely attempt to support this allegation with any facts at the time.

Pearce next asserts that the automatic stay of the bankruptcy code prevented the sale from going forward. This argument is belied by the Bankruptcy Court's order of September 30, 2025, indicating that the automatic stay did not prevent the property from proceeding to a Sheriff's sale.

Finally, Pearce maintains that by confirming the Sheriff's sale this Court will put the health of his mother and family in jeopardy. The Court is sympathetic to the plight of Pearce and his family. However, that is not a valid reason to set aside the Sheriff's sale.

20

**IT IS HEREBY ORDERED** this 28th day of January, 2026 that:

1. Defendant's motion to set aside the Sheriff's sale of 161 Masseys Church Road, Townsend, DE 19734 is **DENIED**;

2. Plaintiff's motion to confirm the Sheriff's sale of 161 Masseys Church Road, Townsend, DE 19734 is **GRANTED**;

3. Any lis pendens filed and/or recorded by Defendant as to 161 Masseys Church Road, Townsend, DE 19734 be and hereby are **STRICKEN**.

*/s/ Francis J. Jones, Jr.*

Francis J. Jones, Jr., Judge

cc:    File & ServeXpress